RIVERSIDE CONTRACTING CO. v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County.   December 23, 1913.)

1. RECORDS (§ 20*)—CONCLUSIVENESS—FILING MARKS.
    The record of the time of filing an assignment of moneys to become due under a contract with a city in the office of the city comptroller, as shown by the stamp thereon, was conclusive as to the time of filing.

    [Ed. Note.—For other cases, see Records, Cent. Dig. § 44; Dec. Dig. § 20.*]

2. MECHANICS' LIENS (§ 198*)—PRIORITY—LIEN AND ASSIGNMENT.
    An assignment of moneys due and to become due under a contract with a city to a bank for money advanced by it to the contractor with which to carry on the contract was entitled to priority over liens for labor and materials, filed subsequent to the assignment in the office of the city comptroller, notwithstanding Labor Law (Consol. Laws, c. 31) § 9, providing that, upon the appointment of a receiver for a partnership or corporation, the wages of its employés shall be preferred to every other debt or claim, and Lien Law (Consol. Laws, c. 33) § 13, providing that persons standing in equal degrees as colaborers or materialmen shall have priority according to the date of filing their respective liens, but that in all cases laborers for daily or weekly wages shall have preference over all other claimants without reference to the time when such laborers shall have filed their notices of liens; the preference given by those sections existing only as to the time of filing among those who have filed liens, and not relating back to the time when the services were rendered or materials furnished.

    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 348–355; Dec. Dig. § 198.*]

3. MECHANICS' LIENS (§ 198*)—PROCEEDINGS TO PERFECT—FILING LIEN.
    The rights and priorities given by the lien law are dependent upon the filing of the lien and do not exist as inchoate rights arising from the fact that labor has been done or materials furnished.

    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 348–355; Dec. Dig. § 198.*]

4. BANKRUPTCY (§ 188*)—TRANSFERS BY BANKRUPT—VALIDITY.
    Under Bankruptcy Act July 1, 1898, c. 540, § 67, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), providing that liens given or accepted in good faith and not in contemplation of or in fraud upon that act and for a present consideration, recorded according to law, if record thereof is necessary to impart notice, shall not be affected by that act, an assignment of moneys due and to become due under a contract with a city, duly filed with the city comptroller, was valid as against the receiver in bankruptcy of the contractor, who was subsequently appointed, proceeded to carry out the contract, and paid certain claims for labor, taking assignments thereof, where the assignment was not fraudulent, but was for moneys advanced by the assignee to enable the contractor to carry on the work under the contract.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–289, 291–295; Dec. Dig. § 188.*]

Action by the Riverside Contracting Company against the City of New York and others to foreclose a mechanic's lien, with which a number of similar actions were consolidated.  Judgment for defendant the First National Bank of Bayonne, New Jersey.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Allen Lee Smidt, of New York City, for plaintiff.

Archibald R. Watson, Corp. Counsel, of New York City (John L. O'Brien, of New York City, of counsel), for defendant City of New York.

Jacob I. Berman, of New York City, for defendant First Nat. Bank of Bayonne, N. J.

Myers & Goldsmith, of New York City (Emanuel J. Myers, of New York City, of counsel), for defendant Josiah Canter, as receiver, etc.

Foley & Martin, of New York City, for defendant wage claimants.

Edward M. & Paul Grout, of New York City (Dean Potter, of New York City, of counsel), for Moran Towing & Construction Co. and others.

W. J. Leitch, of New York City, for defendant Bachman.

BLANCHARD, J. The city of New York made a contract with the Harbor Dredging & Scow Construction Company for the disposition of light refuse and other waste materials. The latter, in order to enable it to carry on the contract, from time to time borrowed certain sums of money from the First National Bank of Bayonne, N. J., and as security therefor assigned to the bank from time to time moneys due and to become due from the city of New York under the terms of the contract. In the prosecution of the work it had occasion to employ the services of laborers and subcontractors and to purchase materials and other·necessaries. Several of the assignments ·above referred to were paid by the city as'they became due to the assignee, the First National Bank of Bayonne, N. J. On the 3d day of January, 1913, an assignment of such moneys was made and was forwarded to the commissioner of street cleaning for his approval, as provided by law. This approval having been obtained, the assignment was recorded in the office of the comptroller on the 10th day of January at 3:14 p. m. Four minutes thereafter, as appears by the records of the office, a lien on behalf of the plaintiff corporation was also filed. On the 22d day of January, 1913, an involuntary petition in bankruptcy was filed in the United States Court for the Southern District of New York against the Harbor Dredging & Scow Construction Company and a receiver duly appointed. The receiver, with the consent of the United States Court and with the approval of the street cleaning commissioner, continued to carry on the contract. In pursuance of ·his duties, with the approval both of the United States Court and of the street cleaning commissioner, he raised moneys and paid certain laborers who had claims against the company for services rendered between the 1st and 15th days of January, 1913, and took from them assignments of their claims. Thereafter these laborers performed services from January 15th until February 8th and thereafter filed individual liens for their wages for this work. At or about the same time various materialmen and subcontractors filed liens for work done and materials furnished the Harbor Dredging & Scow Construction Company in the performance of its contract.

A stipulation and several concessions are before the court. It is stipulated that the First National Bank of Bayonne, N. J., paid out

certain sums of money to the Harbor Dredging & Scow Construction Company. It is conceded that the amount of the assignment to the First National Bank of Bayonne, N. J., is for the sum of $18,996.38. It is further conceded by the city of New York that the sum of $17,079.74 is due and owing under the contract. It is also conceded by the city that the liens which have been filed are good and valid liens upon their face, and that the amounts claimed to be due thereunder are for work done. Nor is the validity of any of the liens disputed by any of the parties herein.

[1] Upon the trial one issue of fact alone was presented. This related to the time of the filing of the assignment to the bank. I am of opinion that the record of the time of filing as shown by the stamp is conclusive upon this point, and that the assignment in point of time preceded the lien filed by the plaintiff, the Riverside Contracting Company. All the parties have submitted their rights to possession of the fund in the hands of the city to the determination of the court.

[2] There are but two questions which require consideration: First, whether the assignment to the bank of all the moneys due is valid as against the liens subsequently filed by laborers and materialmen and subcontractors; and, second, whether the appointment of a receiver by the United States Court in the bankruptcy proceedings of the Harbor Dredging & Scow Construction Company under the laws and statutes of the United States entitles him as assignee of the claims of the laborers for work done to a preference against the assignment to the bank. The plaintiff relies primarily in its contention that the assignment is invalid as against the claims of the laborers and materialmen upon the cases of the M. & T. Nat. Bank v. The Mayor, 97 N. Y. 355, and the M. & T. Nat. Bank v. Winant, 123 N. Y. 265, 25 N. E. 262. Those cases arose under contracts entered into in 1875 and 1876, and were made prior to the passage of the first lien law relating to work done and materials furnished on public works in cities (chapter 315, Laws of 1878). At the time of the decision in these cases an ordinance of the city of New York was in force under which a clause in the contracts provided in substance that the contractor would furnish to the commissioner in whose department the work was being carried on satisfactory evidence that all persons who had done work or furnished material under the agreement, or who may have given written notice to the commissioner, have been fully paid or secured in their claims, and that in the event that such proof was not furnished the city should retain from any moneys due to the contractor so much as was necessary to satisfy these claims. It was held in these cases that this clause in the contract was inserted for the protection of laborers and materialmen and not for the protection of the city, and for this reason the claims of laborers and materialmen took precedence over an assignment which had been made of moneys due and to become due to the contractor under the terms of the contract. It would seem, however, in the light of recent decisions, that these cases are inapplicable to the facts in the case at bar. The facts herein would seem to be well within the purview of the decision in the case of McKay v. City of N. Y., 46 App. Div. 579, 62 N. Y. Supp. 58, which discusses the application of

the provisions of the General Lien Law (chapters 418 and 419 of the Laws of 1897).

[3] It is well-established doctrine that the rights and priorities which are given under the lien law are dependent upon the filing of the lien and do not exist as inchoate rights arising from the fact that labor has been done or materials furnished. Tisdale Lumber Co. v. Read Realty Co., 154 App. Div. 270, 138 N. Y. Supp. 829; Mack v. Colleren, 136 N. Y. 617, 32 N. E. 604. As is pointed out in the case of Bates v. Salt Springs Nat. Bank, 157 N. Y. 322, 51 N. E. 1033, it is well established in the case of private contracts, in the absence of anything in the contract to the contrary and before any lien is filed, that the contractor has an absolute right to assign any or all of the moneys due or to become due to his creditor in payment of his debt. In the McKay Case it was held that the fact that the contract had been made with the city of New York did not vary the rule laid down in Bates v. Salt Springs Nat. Bank. In this case, as in the McKay Case, a clause is found in the contract which is drawn under the statute above referred to. This statute has, in so far as it is material here, been re-enacted and is the law at the present time (chapter 873, Laws 1911). The interpretation of this clause as derived from the opinion in that case changes the rule as laid down in the cases relied upon by the plaintiff, and establishes that these clauses are inserted in the contract not for the protection of lienors, but as a protection to the city. While it cannot be disputed that under section 9 of the Labor Law (Consol. Laws, c. 31) and section 13 of the Lien Law (Consol. Laws, c. 33), there is a preference given to laborers for wages, nevertheless, I think the above authorities clearly establish that this preference exists only as to the time of filing among those who have filed liens within the purview of the law, and does not relate back to the time when services were rendered or materials furnished. Under the stipulation in evidence the assignment to the bank was for moneys actually advanced in carrying on the work, and from the evidence would seem to have been accepted by the bank in good faith and without notice of any claims in suit. Under the circumstances it constituted an equitable assignment of the fund, and, as the liens were filed subsequent to the assignment, I am constrained to hold that it operated as a valid assignment of the fund as against all claimants under the statute.

[4] With the contention of the receiver that he is entitled to priority under the statutes of the United States I am unable to agree. As is pointed out in the exhaustive and well-considered opinion in Re Crammond (D. C.) 145 Fed. 966, under the provisions of the Bankruptcy Act, "liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, and which have been recorded according to law, if record thereof was necessary in order to impart notice," and "not obtained in or by reason of any proceeding at law or in equity or through legal proceedings," or not "given with intent to hinder, delay, or defraud creditors or any of them," are held to be valid as against the claims of creditors and do not pass into the hands of the officers of the United States Court. Although it cannot be said that the assignment to the bank was strictly speaking a lien within section 67 of the Bankruptcy Act above referred

to, nevertheless the general scope and purport of the act would seem to indicate that any valid lien, and in this case the assignment would seem to be such a lien, is held valid as against a trustee or receiver in bankruptcy. Thompson v. Fairbanks, 196 U. ·S. 296, 516–526, 25 Sup. Ct. 306, 49 L. Ed. 577; Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986. There is an entire absence of proof of any acts either by the contractor or by the bank in this case which invalidates the assignment within the purview of the above provisions of the statute. As is pointed out above, the assignment was for moneys which had been advanced by the bank, and is therefore an equitable assignment of the fund, and under the United States Bankruptcy Act as construed by the above authorities, would seem to constitute a valid lien as against the receiver.

It does not seem therefore that the receiver, by virtue of his position as an officer of the United States Court, stands in any better position than he would as an individual, or than the laborers who have filed individual liens for their services. For this reason I do not think it necessary to discuss the question as to whether his rights as assignee are as good as those of the individual claimants themselves. While I am loath to arrive at the conclusion reached, as it prevents those who are entitled to the fruits of their labor from obtaining their due, I am unable to find any legal grounds for protecting them. I am disposed, however, to grant a stay, if it shall be applied for, until a review by the appellate tribunal can be obtained.