RIVERSIDE CONTRACTING COMPANY, Appellant, v. THE CITY OF NEW YORK, Defendant, CHRISTOPHER L. WILLIAMS, as Receiver of the FIRST NATIONAL BANK OF BAYONNE, Respondent, and JOSIAH CANTER, as Receiver of the HARBOR DREDGING AND SCOW CONSTRUCTION COMPANY, et al., Appellants.

New York (city of) — contract for the removal of refuse and ashes is not one for a public improvement, and is not within the provisions of the Lien Law — an absolute assignment of all moneys earned and due under such contract approved by and filed in all offices required by statute conveys an absolute title to moneys due on the contract — rights of assignee are superior to claims of lienors or others asserting preferred claims for labor under Lien Law or Bankruptcy Act.

1. The allegations of the complaint admitted by all of the defendants are that the defendant Harbor Dredging and Scow Construction Company made a contract with the city of New York, whereby

that company agreed to provide for the final disposition of all ashes, street sweepings, light refuse and rubbish delivered on board scows or other vessels at the water-front dumps of the department of street cleaning.   The contract also provided that if any person claiming to have performed any labor or furnished any machine, implement, appliance or material toward the performance or completion thereof should file with the department of street cleaning and with the head of the finance department of the city of New York, any such notice as is provided for in any lien law of the state of New York, the city should retain from the moneys under its control, due or to grow due from it under this contract, so much of such moneys as should be sufficient to satisfy the amount in such notice alleged or claimed to be due to the person or persons filing such notice, and that the moneys so retained should be retained by the city until the lien thereon created thereby should be discharged.   This action is brought to determine the rights of the assignee of the contracting company and of sundry persons who have filed purported liens on moneys earned under the contract.   Section 5 of the Lien Law (Cons. Laws, ch. 33) reads: " A person performing labor for or furnishing materials to a contractor, his sub-contractor or legal representative, for the construction of a public improvement pursuant to a contract by such contractor with   *   *   *   a municipal corporation, shall have a lien for the principal and interest of the value or agreed price of such labor or materials upon the moneys of   *   *   *   such corporation applicable to the construction of such improvement, to the extent of the amount due or to become due on such contract, upon filing a notice of lien as prescribed in this article."   On examination of the terms of the contract, *held*, that it was fundamentally for the removal of refuse and ashes; that was its primary purpose and characterizing feature, and such a contract, which is not one for making a public improvement, cannot fairly be turned into one of the latter kind because as a mere incident to its performance provision is made for depositing the refuse in some place where it will make filling or land nor by the construction of a dock for the purpose of facilitating that work.   The character of a contract under the Lien Law must be established by its principal purpose and not by some merely incidental result.

2. The claim of the respondent is based upon an absolute assignment by the contractor of an amount already earned and due on its contract in payment of an existing indebtedness, and this assignment was duly approved and filed in all the offices required by any statute.   The clause in the contract providing in substance for the retention by the city of sufficient moneys with which to pay claims on

which liens had been filed is applicable only to claims for which liens could be filed under the statute. Hence, respondent acquired an absolute title to moneys due under the contract and not in any sense a lien thereon such as is mentioned in the statute, and the rights of the holder thereof are superior to the rights of the claimants who have filed liens, even assuming that the Lien Law was applicable to this contract, and to any claims for preference in payment for labor under either the Lien Law or the Bankruptcy Act. (*Mechs. & T. Nat. Bank* v. *Winant,* 123 N. Y. 265, and *Merchants & T. Nat. Bank* v. *Mayor, etc., of N. Y.,* 97 N. Y. 355, distinguished; *Bates* v. *Salt Springs Nat. Bank,* 157 N. Y. 322, followed.)

*Riverside Contracting Co.* v. *City of New York,* 165 App. Div. 972, affirmed.

(Argued June 2, 1916; decided July 11, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 31, 1914, affirming a judgment in favor of defendant, respondent, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Allan Lee Smidt* for plaintiff, appellant. The plaintiff's lien is superior to the assignment to the First National Bank of Bayonne. (*M. & T. Bank* v. *Winant,* 123 N. Y. 265; *M. & T. Bank* v. *Mayor, etc.,* 97 N. Y. 355; *Mayor, etc.,* v. *M. & T. Bank,* 130 App. Div. 750; *Bates* v. *Salt Springs Bank,* 157 N. Y. 322; *McKay* v. *City,* 46 App. Div. 587.) Upon the trial a direct issue of fact was presented as to the time of filing of the bank's assignment and the plaintiff's notice of lien, there being a difference of four minutes, as appeared by the stamps upon the papers. On this question the plaintiff was not permitted to give any testimony. This was error. (*Blair* v. *Ritchie,* 72 Vt. 312; *Johnson* v. *Burden,* 40 Vt. 567; *Franke* v. *Alexander,* 88 Mo. App. 37; *Kalb* v. *Wise,* 5 Ohio N. P. 5.)

*Emanuel J. Myers, Gordon S. P. Kleeberg* and *James A. Martin* for defendants, appellants. Wages due to laborers which have been earned within three months before the date of the commencement of the bankruptcy proceedings are given priority by the Bankruptcy Law over all other claims arising under the same contract, statutory or contractual, not even excepting those due the sovereign state. (Nat. Bank. Law, § 64; *Guarantee Co.* v. *Title Co.*, 224 U. S. 152; *Roach* v. *Curtis*, 191 N.Y. 387; 115 App. Div. 765; *Crowe* v. *Liquid Carb. Co.*, 208 N. Y. 396; *Knettle* v. *Newcomb*, 22 N. Y. 249; *Terre Haute* v. *Ward*, 56 Ind. App. 155; *Hall* v. *C. & C. R. Co.*, 25 Am. R. R. 53; *Guarantee Co.* v. *Title Co.*, 224 U. S. 152; *Matter of Blackstaff Eng. Co.*, 200 Fed. Rep. 1019; *Matter of Tebo*, 101 Fed. Rep. 419; *United Surety Co.* v. *Iowa Mfg. Co.*, 179 Fed. Rep. 55; *Shropshire* v. *Bush*, 204 U. S. 186.) The Lien Law creates a priority and secures and provides for a lien for the wages of laborers upon the property of the contractor, superior to all other claims made under the same contract and under the same article, regardless of the time of filing the notice. (*Von Kannel Co.* v. *Astor*, 119 App. Div. 214; *Harvey* v. *Brewer*, 178 N. Y. 5; *Brace* v. *Gloversville*, 167 N. Y. 452; *Hurley* v. *Allman, etc., Co.*, 144 App. Div. 300; *Davis* v. *Bliss*, 187 N. Y. 77; *McDonald* v. *Vil. of Ballston Spa*, 34 Misc. Rep. 496; *Matter of Cramond*, 145 Fed. Rep. 966; *Dietz* v. *Coal Co.*, 263 Ill. 480; *Drew* v. *Vil. of White Plains*, 157 App. Div. 394; *People* v. *McClave*, 99 N. Y. 83; *Caesar* v. *Bernard*, 156 App. Div. 724.) The provision of the Labor Law for preference of wages over all other claims where receivership of corporations is involved, creates and fastens a lien therefor on the assets of the corporation, and that lien is expressly reserved and retained by the National Bankrputcy Law. (*Matter of Muller*, 21 App. Div. 629; *Matter of Laird*, 109 Fed. Rep. 550; *State* v. *Ætna L. Ins. Co.*, 117 Ind. 251; *Dunklee* v. *Crane*, 103

Mass. 470; *City of Paterson* v. *O'Neill,* 32 N. J. Eq. 386; *Bell* v. *Hiner,* 16 Ind. App. 184; *Matter of Byrne,* 97 Fed. Rep. 762; *United States* v. *Rundle,* 100 Fed. Rep. 400; *Matter of Bennett,* 153 Fed. Rep. 673; *Union Trust Co.* v. *Walker,* 107 U. S. 596; *Burnham* v. *Bowen,* 111 U. S. 776; *Northern P. R. R. Co.* v. *Lamont,* 69 Fed. Rep. 23.) The labor claimants performed work for the permanent improvement of real property belonging to the city of New York, and, therefore, are entitled to a lien. (*Schaghticoke Powder Co.* v. *Railroad Co.,* 183 N. Y. 306; *Griffin* v. *Ernst,* 124 App. Div. 289; *Ogden* v. *Alexander,* 140 N. Y. 356; *Schwartz* v. *Lewis,* 138 App. Div. 566.) The claim that the Labor Law does not apply to the Harbor Company because it is a foreign corporation, although lawfully doing business in this state, wherein a receiver has been appointed, is untenable because it is violative of the public policy of this state. (*Vanderpool* v. *Gorman,* 140 N. Y. 563; *Mabon* v. *Ongley El. Co.,* 156 N. Y. 196; *Matter of Hurlburt Co.,* 38 App. Div. 323; *Southern Life Ins. Co.* v. *Packer,* 17 N. Y. 51.)

*Archibald R. Watson, John M. Harrington* and *Charles E. McMahon* for respondent. The provision of the contract of June 20, 1911, authorizing the retention of sufficient moneys to satisfy liens, was made, not for the benefit of lienors, but for the protection of the city, and does not operate to subordinate the bank's assignment to any lien subsequently filed. (*Bates* v. *Salt Springs Nat. Bank,* 157 N. Y. 322; *Fortunato* v. *Patten,* 147 N. Y. 277; *Willard Co.* v. *City of New York,* 81 Misc. Rep. 48; *Contractors' Supply Co.* v. *City of New York,* 153 App. Div. 60.) The fact that the bank's assignment was filed before the filing of the plaintiff's lien was properly established in the court below. (*Jackson* v. *Phillips,* 9 Cow. 94; *Keller* v. *N. Y. C. R. R. Co.,* 24 How. Pr. 172; *Blum* v. *Langfeld,* 37 App. Div.

590; *Erdman* v. *Upham*, 70 App. Div. 315; *Crate* v. *De Cora*, 15 N. Y. Supp. 607; *Chapman* v. *Brooks*, 31 N. Y. 75; *Callan* v. *Peck*, 91 Atl. Rep. 34.) Upon the filing of its assignment from the Harbor Company the bank acquired, not a mere lien upon, but absolute legal title to the entire fund withheld by the city; and neither the Bankruptcy Law nor the Labor Law has any application to the case at bar. (*Matter of Cramond*, 145 Fed. Rep. 966; *Bates* v. *Salt Springs Nat. Bank*, 157 N. Y. 322; *McKay* v. *City of New York*, 46 App. Div. 579; *Contractors' Supply Co.* v. *City of New York*, 153 App. Div. 60; *Thompson* v. *Fairbanks*, 196 U. S. 516; *Hewit* v. *Berlin Machine Works*, 194 U. S. 296.) The Lien Law does not give a preference to laborers' liens over a previously filed assignment of moneys due or to become due for a public improvement. (*Matter of Cramond*, 145 Fed. Rep. 966; *Cont. Supply Co.* v. *City of New York*, 153 App. Div. 60.) The labor claimants herein performed no labor for the construction of a public improvement, and consequently no lien could be legally filed by them under the Lien Law. (Cons. Laws, ch. 33, §§ 2, 5, 12.)

HISCOCK, J. This appeal calls upon us to consider conflicting claims to a balance due on a contract made by the city of New York with the Harbor Dredging and Scow Construction Company of which company the appellant Canter is now receiver in bankruptcy. As the judgment stands this balance has been awarded to the receiver of the First National Bank of Bayonne under an assignment made to said bank by said Construction Company covering said balance, and the appellants who claim various portions of said balance as supposed lienors, on account of labor and materials performed for or furnished to said Construction Company, have been defeated. The action as finally tried was a consolidation of several actions involving claims by different parties to said fund.

In view of some of the questions to be discussed, it is important to observe at the outset the character of the contract between the city and the Construction Company, which produced the balance now being contended for, as fixed by the pleadings.

The allegations of the complaint on this subject which seem to have been admitted by all of the defendants are that " the defendant Harbor Dredging and Scow Construction Company * * * made a contract with the Commissioner of Street Cleaning, acting for the City of New York, whereby the said defendant Harbor Dredging and Scow Construction Company agreed to provide for the final disposition of all ashes, street sweeping, light refuse and rubbish delivered on board scows or other vessels at the water front dumps of the Department of Street Cleaning * * * under conditions provided in said contract." Said complaint also set forth another provision in the contract which is claimed by appellants to be important and which, so far as material here, provided: "If at any time * * * any person or persons claiming to have performed any labor or furnished any machine implement, appliance or material toward the performance or completion of this contract shall file or cause to be filed with the Department of Street Cleaning and with the head of the Finance Department of the City of New York, any such notice as is provided for in any lien law of the State of New York, then and in every such case the City shall retain * * * from the moneys under its control, due or to grow due from it under this contract, so much of such moneys as shall be sufficient to pay off, satisfy and discharge the amount in such notice alleged or claimed to be due to the person or persons filing such notice or causing the same to be filed * * * the moneys so retained shall be retained by the City until the lien thereon created by the said act and the filing of the said notice shall be discharged pursuant to the provisions of said act."

The trial court found on evidence which fully supported its findings, where excepted to, in substance the following facts:

June 20, 1911, the city of New York entered into a contract with the Harbor Dredging and Scow Construction Company "for the final disposition of ashes, etc., on board of deck, scow and other vessels at the water front dumps  *  *  *  and for the removal of such ashes, etc., to Riker's Island and elsewhere," and on January 3, 1912, the contractor had earned and there was due and owing from the city on said contract the sum of $17,079.94; on and prior to said last-mentioned date the First National Bank of Bayonne had loaned and advanced to said defendant contractor upwards of $19,000, and on said date said contractor executed to the bank an assignment whereby it "assigned  *  *  *  absolutely and unconditionally, the claim and demand for money due on the contract between it and the City of New York,  *  *  *  amounting to $18,966.38," and which assignment was consented to by, and filed in the offices of, the various departments of the city of New York as required by statute "and also in the office of the County Clerk of the County of New York, on January 10, 1912, at 3:10 P. M.  *  *  *  under and pursuant to the provisions of the Lien Law of the State of New York;" that the plaintiff "prior to January 10, 1912, rendered services consisting of the erection and construction of docks at Riker's Island" for the Construction Company at the price and value of $4,216.95, and January 10, 1912, at 3:18 P. M., filed a notice of lien for such services "pursuant to the provisions of the Lien Law of the State of New York;" that between January 1, 1912, and January 15, 1912, various day laborers performed services for the Construction Company "in and about the performance of said contract to unload and dump said ashes in and upon Riker's Island," to whom there was due on said last-mentioned date wages aggregating $4,041.77; that January 22, 1912, defendant Canter was

appointed receiver in bankruptcy of said Construction Company and thereafter paid said wages to said laborers, taking assignments of their claims; that prior to February 8, 1912, various other persons "performed manual labor at Riker's Island, under and in pursuance of the foregoing contract," and became entitled to wages amounting to $4,249.07, and liens were filed for said wages "pursuant to said Lien Law of the State of New York."

It thus appears that the claim of the respondent receiver of the Bank of Bayonne is based upon an absolute assignment by the contractor of an amount already earned and due on its contract in payment of an existing indebtedness, and there is no question that this assignment was duly approved and filed in all the offices required by any statute on any theory.

Several reasons are urged by counsel for the various appellants, who claim to have performed labor or furnished materials in the performance of the contract in question, why the judgment appealed from should be reversed or at least modified to the extent of allowing payment of their respective claims before payment to the respondent. In behalf of the plaintiff appellant, it is contended that the clause in the contract which has been quoted in effect providing for the retention by the city of a sufficient portion of any balance due to the contractor, with which to pay any liens, was inserted for the benefit of such creditors as it, and entitles it to payment from the present balance; also that it was prevented from introducing evidence which would have established that notice of its lien was filed before the assignment to the bank, thereby giving it a prior claim under the Lien Law upon the balance due.

In behalf of the appellants to whom are due wages for labor, in addition to other claims which do not require discussion, it is argued that said claims in whole or part take precedence over respondent's claim by virtue of

section 25 of the Lien Law (Cons. Laws, ch. 33), which reads as follows:

"Priority of liens for public improvements: Persons having liens under contracts for public improvements standing in equal degrees as co-laborers or material men shall have priority according to the date of filing their respective liens; but in all cases laborers for daily or weekly wages shall have preference over all other lienors having liens arising under the same contracts pursuant to this article, without reference to the time when such laborers shall have filed their notice of lien."

Or, under section 9 of the Labor Law (Cons. Laws, ch. 31), which provides, "Payment of wages by receivers. Upon the appointment of a receiver of a partnership or of a corporation organized under the laws of this state and doing business therein, other than a moneyed corporation, the wages of the employees of such partnership or corporation shall be preferred to every other debt or claim."

Or, under the provisions of the Bankruptcy Act, which give priority to "Wages due to workmen * * * which have been earned within three months before the date of commencement of proceedings."

It will be observed that several of these arguments are based on the theory that the materials furnished or labor performed by the appellants were of a nature mentioned in and protected by the provisions of the Lien Law. Of course, if this is not so and the appellants had no right under said law to file liens for their respective claims, then there can be no basis for the argument that under its provisions and by virtue of the notice filed by them they are entitled to a preference of payment over that to be made to the receiver of the bank under its assignment. This seems to be fully realized by some of them at least, for they argue that their claims are of a nature described in and protected by section 5 of said law, which reads: "A person performing labor for or furnishing materials to a contractor, his sub-contractor or legal representa-

tive, for the construction of a *public improvement* pursuant to a contract by such contractor with * * * a municipal corporation, shall have a lien for the principal and interest of the value or agreed price of such labor or materials upon the moneys of * * * such corporation applicable to the construction of such improvement, to the extent of the amount due or to become due on such contract, upon filing a notice of lien as prescribed in this article."

We thus come to the fundamental question whether the contract entered into by the Construction Company with the city of New York was a contract for a "public improvement," so that liens could be filed thereunder, and the answer to this question will be determined by statutory definitions. We find the words "public improvement" defined as follows: "Public improvement. The term 'public improvement,' when used in this chapter, means an improvement upon any real property belonging to * * * a municipal corporation." (Section 2.) Then we find the word "improvement" defined as meaning "the erection, alteration or repair of any structure upon, connected with, or beneath the surface of, any real property and any work done upon such property, or materials furnished for its permanent improvement."

I do not think that the contract made by the Construction Company with the city of New York was one for a "public improvement" within these definitions. As appears from the quotations made from the pleadings and findings, illuminated, if that were necessary, by the discussion on the trial, the contract was one for the removal of ashes and refuse, and I do not think that it can reasonably be claimed that such a contract is one for a "public improvement." The attempt is made to stretch it into such an one by reference to the condition that the ashes and refuse so taken by the contractor were to be transported to Riker's Island and other places, wherefrom it is argued that the purpose was to fill in and

make land and that this amounted to an improvement under the statute. There seem to be various difficulties in the way of a successful prosecution of this attempt to interpret the contract. It does not appear that the city desired to improve Riker's Island, or that in fact the island was in any way improved by dumping ashes and garbage upon it. So far as we know this provision may have been inserted in the contract because the city had at such a place a garbage plant or because this was deemed to be a suitable dumping place where refuse might be deposited without any resulting annoyance to citizens or danger to their health. Moreover, even if it were to be assumed that one of the reasons for providing that this material should be taken to Riker's Island was that thereby some filling would be accomplished, I do not think that this feature would bring the contract under which appellants must claim within the description of one for a " public improvement," and within the protection of the Lien Law. The contract was fundamentally for the removal of ashes and refuse. That was its primary purpose and characterizing feature, and such a contract, which certainly is not one for making a public improvement, cannot fairly be turned into one of the latter kind because as a mere incident to its performance provision is made for depositing the refuse in some place where it will make filling or land. The character of a contract under the Lien Law must be established by its substantial purpose and not by some merely incidental result.

On first thought it might seem that the material furnished and services performed by the plaintiff appellant, in constructing docks at Riker's Island more nearly met the test of having been so furnished and performed in the construction of a public improvement than do the services of the other claimants who we may assume were simply employed in handling the material which was being carried away by the Construction Company. Undoubtedly if such material and labor had been supplied and performed

**608** Riverside Cont. Co. *v.* City of New York.

[218 N. Y.]       Opinion, per Hiscock, J.       [July,

under a contract with the city of New York for the construction of docks on land owned by it, they would come within the protection of the Lien Law, but such is not the case. They were furnished and performed as distinctly alleged " in conformity with the terms of and towards the performance or completion of the   *   *   * contract between " the Construction Company and the city of New York, and under the express terms of section 5 of the Lien Law, on which plaintiff must rely, its only claim to the fund in question must be that the principal contract towards the completion of which said materials and labor were furnished and performed was one for a public improvement, and such we have seen is not the character of said contract. The appellant must claim under and through that contract and its rights be determined by its nature rather than by the character of the particular work which it contributed toward its performance.

Sight is not lost of the circumstance that in various findings of fact in the case are statements to the effect that the parties filed notices of liens, etc., "pursuant to the Lien Law," and that some of them commenced actions and filed notice of pendency thereof "pursuant to said Lien Law," or the statement in the conclusions of law that "the several claims and liens " of the appellants are subject and subordinate to the rights of respondent, but I do not regard these as amounting to a decision controlling upon the respondent that these parties had liens under said law. No such claim as that is made by the appellants. It seems to me that the statements amount to no more than the one that notices of liens were filed which in form conformed to the Lien Law, and that the claims covered thereby were subordinate to respondent's rights. If the views which we have expressed are at all correct it would be so extraordinary to hold that a contract for the removal of refuse was one for a public improvement that it ought not to be assumed that the court meant to hold that view, or otherwise than that the steps taken by the

various parties were in accordance with the provisions of the Lien Law if that had been applicable.

If I were wrong in these views I think it would be necessary to hold that it was error for the court to exclude evidence offered by the plaintiff appellant, for the purpose of showing that its notice of lien was filed in the comptroller's office before the assignment to respondent. If these claims had been covered by the Lien Law priority in filing would have been material, and I know of no rule which makes the stamp of a municipal official conclusive proof of the time of filing a paper in his office at least between the original parties.

But aside from this last claim, if it should be assumed for the sake of the argument that the claims of the various appellants came within the provisions and protection of the Lien Law because furnished toward the performance of a contract for a public improvement, and we should thus come to the consideration of arguments based on that theory, I think that there still would be answers to these which would defeat them, and some of these will be given.

As has been stated, it is urged that the clause in the contract providing in substance for the retention by the city of sufficient moneys with which to pay claims on which liens had been filed was for the benefit of claimants and that the bank took nothing under its assignment except the surplus which remained after payment of said claims. This contention, which is not claimed to be applicable to any claims except those for which liens could be filed under the statute, is largely based on the cases of *Mechs. & T. Nat. Bank* v. *Winant* (123 N. Y. 265) and *Merchants & T. Nat. Bank* v. *Mayor, etc., of N. Y.* (97 N. Y. 355) which involved claims for material or services furnished by a subcontractor under a contract with the municipality, and because of a clause in the contract somewhat similar to the one in question it was in effect held that an assignment by the contractor of moneys

due or to grow due on the contract only covered the surplus after payment by the city of claims or liens; that the clause was for the benefit of the claimants.

These decisions, however, do not now seem to be applicable. In *Bates* v. *Salt Springs Nat. Bank* (157 N. Y. 322) it was held that the provision in a building contract between private parties that no payment should be made until the contractor had produced a certificate that there were no liens filed against the premises, is presumably for the benefit of the owner only and not for the protection of laborers or materialmen and did not deprive the creditors of a contractor holding an assignment of moneys due under such contract of the right to such moneys as against subsequently filed liens of laborers and materialmen. It was there said that there was a marked distinction between the earlier cases just referred to and a case like the *Bates* case involving a contract between private parties because in the latter case liens could be acquired which would be binding upon the owner and, therefore, the presence of a clause in the contract relieving the owner from the obligation of payment if there were liens upon the building would be only for his relief and protection, whereas at the time the earlier cases were decided no lien could be filed for materials or labor under a municipal contract. At the time the present claims arose, however, the law had been changed and there was practically the same right to file a lien in the case of labor or materials furnished under a municipal contract as for those furnished under a contract between private parties, and under such circumstances I think that the reasoning which was applied in the earlier cases has ceased to be applicable and the other rule laid down in the *Bates* case becomes controlling. (See, also, *McKay* v. *City of New York*, 46 App. Div. 579.)

We next come to the contention that under the provisions of the Lien Law the claims for wages of various appellants were entitled to a preference over the assign-

ment by the contractor to the bank, although notices of liens for such wages were not filed until after the assignment had been filed. This claim is based on section 25 of the Lien Law which at the expense of repetition will be here again quoted for convenience, and which reads: "Priority of liens for public improvements. Persons having liens under contracts for public improvements standing in equal degrees as co-laborers or material men shall have priority according to the date of filing their respective liens; but in all cases laborers for daily or weekly wages shall have preference over all other lienors having liens arising under the same contracts pursuant to this article, without reference to the time when such laborers shall have filed their notice of lien."

I appreciate the force of the very earnest plea which counsel makes that the wages of ordinary laborers working by the day or week should have preference in payment over other claims arising under a contract. That policy commands the support of very weighty arguments. But however persuasive the reasons may be in favor of such preference it is conceded that it can only be secured in such a case as this through statutory enactment and it seems perfectly plain that the statute just quoted does not give a preference in the payment of appellant's wages over the assignment by the contractor to the bank of moneys due or to grow due under the contract when the notice of lien for the wages is filed after the assignment has been executed and filed as provided by the statute. The provision which has been quoted plainly and explicitly discusses the order of payment and priority amongst "liens" under contracts for public improvements. It provides for a preference in payment of laborers over "all other lienors having liens arising under the same contracts." It would be an utterly unjustifiable extension of the meaning of said section and of these words in my opinion to hold that under the assignment by the Construction Company to the bank of moneys due

on the contract in payment of a claim, the latter acquired a "lien" under the contract between the Construction Company and the city or had a "lien" within the meaning of said statute. It acquired, subject to statutory requirements for filing, an absolute title to the moneys due under the contract and not in any sense a lien thereon such as is mentioned in the statute. Its title was dependent upon the inherent terms and force of the assignment and not upon any efficacy given to the latter by the Lien Law. The only effect of the statute on the assignment was to limit its operation by certain provisions concerning its filing. It is true that section 13 of said Lien Law provides: "Persons standing in equal degrees as co-laborers or material men shall have priority according to the date of filing their respective liens; but in all cases laborers for daily or weekly wages shall have preference over all other claimants under this article, without reference to the time when such laborers shall have filed their notices of lien." This section is somewhat broader in that it provides for a preference in payment of wages over all other "claimants" instead of "lienors." But I do not think that this helps the appellants. In the first place, their rights on their theory are governed by the provisions of section 25. But even if we should consider the language of section 13 in construing section 25 and attempt to secure an harmonious construction for both sections, we think we should still be obliged to come to the conclusion that these provisions considered in connection with all the provisions of the statute relate to the rights between themselves of various lienors and do not fix the rights as between such lienors and an absolute assignee of moneys due on a contract.

The other claims of the appellants for preference in payment of wages under the Labor Law and the Bankruptcy Law may be briefly disposed of.

The preference provided in the payment of wages under the former where a receiver has been appointed of a cor-

poration applies only in the cases of domestic corporations, and the Construction Company was a foreign corporation. Good reasons probably might be found, if necessary, why the legislature should not attempt to regulate the liquidation in this respect of insolvent foreign corporations, but whether this be so or not it has elected to make this distinction which may not be disregarded by the courts. But in addition this statute relates only to the distribution of the assets of an insolvent corporation which have come into the hands of the receiver. It does not purport to and of course could not make such wages payable out of assets which had been transferred by the corporation before insolvency, and such were the moneys transferred to the bank. That assignment took effect before the insolvency of the Construction Company, and, therefore, the moneys covered thereby did not pass into the hands of the receiver to be distributed in accordance with the provisions of the statute in question.

The same general course of reasoning answers the claim based upon the provisions of the Bankruptcy Act giving preference to the payment of wages of workmen. Disregarding any other answers to this claim, said act manifestly only relates to the distribution of assets coming into the hands of the trustee and does not apply to moneys transferred before the bankruptcy occurred.

For all of these reasons I think that the judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, HOGAN, CARDOZO and SEABURY, JJ.. concur.

Judgment affirmed.