**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**KINGS COUNTY IRON WORKS, Inc.,**
**Defendant-Appellee.**

**No. 268, Docket 23310.**

United States Court of Appeals
Second Circuit.

Argued April 12, 1955.
Decided June 29, 1955.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, A. F. Prescott, Frederic G. Rita, Sp. Assts. to Atty. Gen., and Elliott Kahaner and William C. Gordon, Asst. U. S. Attys., Brooklyn, N. Y., on the brief), for plaintiff-appellant.

Samuel F. Berkon, New York City, for defendant-appellee.

Before CLARK, Chief Judge, and FRANK and HASTIE, Circuit Judges.

CLARK, Chief Judge.

This appeal by the United States involves the relative priority of a federal tax lien and a mechanic's lien under state law. The defaulting taxpayer, Preferred Contractors, Inc., had performed contracting services on premises in New York City for Standard Tinsmith & Roofer Supply Corporation for which it had not been fully paid. When the United States sought to assert its statutory lien under I.R.C. § 3670 on this debt, it was informed that Standard was holding the sum in trust for Kings County Iron Works, Inc., a subcontractor of Preferred, which claimed a mechanic's lien. Ultimately Standard paid the amount in question into court for judicial determination of priority between the United States and Kings. The facts of indebtedness of Preferred to the United States, of Preferred to Kings, and of Standard to Preferred have not been contested by any of the parties concerned. The district court awarded priority to Kings as a "purchaser" protected from unfiled federal liens pursuant to I.R.C. § 3672, and as a prior lienor by virtue of its filing of its mechanic's lien in New York County on August 27, 1947. Judge Abruzzo concluded that the government's prior filing on August 21 in Kings County, where Preferred resided, was defective in that under N.Y. Lien Law, McKinney's Consol.Laws, c. 33, § 240 the government should also have filed in New York County, where the funds and premises in question were located. D.C.E.D.N.Y., 122 F.Supp. 219. The government's appeal challenges Judge Abruzzo's final conclusion, as well as his subordinate findings concerning the character of the mechanic's lien and the sufficiency of the government's filing.

The Internal Revenue Code gives the government a broad lien for tax collection purposes. I.R.C. §§ 3670–3672, 26 U.S.C. §§ 3670–3672. This lien attaches to property of the taxpayer at the time that the local collector receives the appropriate assessment lists. From then on, the lien is fully perfected against all subsequent liens and interests except that of a mortgagee, pledgee, purchaser, or judgment creditor of the taxpayer. For full protection, even against these special classes, notice of the tax lien must be filed in the places designated by state law, or in the appropriate district court if the state has failed so to designate. Here the assessment lists were all received prior to August 21, 1947, when notices of the liens were filed. Apart from the appropriateness of this filing under N.Y. Lien Law § 240, the government argues that no perfected prior interests existed as of this date and that filing is not required for perfection of its lien against Kings.

New York law provides Kings as a mechanic's lienor with two separate and distinct forms of protection for its claim. One of these is the ordinary lien on the real estate improved by Kings' services, which lien Kings perfected by filing on August 27, 1947. N.Y. Lien Law § 13 (5). The other, on which Kings mainly relies here, is an interest in the funds which the owner of the improved real estate owes the prime contractor. These funds are deemed a trust fund for the payment of subcontractors, N.Y. Lien Law §§ 13(7), 36–a, and the trust fund arises when the subcontractor performs his services. Thus the main question before us is the relative priority of the federal tax lien and the antedating interest which Kings has in this state-created trust fund.

Generally speaking, the federal tax lien can be defeated only in one of three ways. Competing lienors may establish that the property on which the government seeks to levy is not the property of the taxpayer at all. They may claim a prior specific and perfected lien entitled to precedence under the rule that " 'the first in time is the first in right.' " United States v. City of New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L. Ed. 520. Or, as long as the federal lien is unfiled, they may seek to bring them-

selves within the classes of creditors discussed above, which are specifically protected by I.R.C. § 3672.[1] All these questions—whether the property is that of the taxpayer, whether a prior lien is sufficiently perfected, whether a creditor can qualify as "mortgagee, pledgee, purchaser, or judgment creditor"—are, in the final analysis, matters of federal law, although state law will be considered where relevant. United States v. Security Trust & Savings Bank of San Diego, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071; United States v. Acri, 348 U.S. 211, 75 S.Ct. 239; United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247; United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244; Rowen v. C. I. R., 2 Cir., 215 F.2d 641. The reason for broad reference to federal principles is the obvious desirability of uniformity in the application of our federal tax laws.

▮ Kings here argues that on all three rationales it is entitled to priority over the federal tax lien, as Judge Abruzzo held. Its main argument for precedence is based on the trust fund created by New York law for the benefit of subcontractors out of funds owing from the owner of the improved property to the contractor. N.Y. Lien Law §§ 13(7), 36–a. This trust fund is available to the mechanic's lienor without filing, Wade v. Nassau Suffolk Lumber & Supply Corp., 275 App.Div. 864, 89 N.Y.S.2d 294, and has been said to make him a statutory assignee of the fund. Cranford Co. v. L. Leopold & Co., 189 Misc. 388, 70 N.Y.S.2d 183, affirmed 273 App. Div. 754, 75 N.Y.S.2d 512, affirmed 298 N.Y. 676, 82 N.E.2d 580, followed in Bain v. Caruso-Sturcey Corp., Sup., 134 N.Y.S.2d 246, and Aquilino v. United States, Sup., 140 N.Y.S.2d 355.

We cannot see, however, that the trust fund given by these statutory provisions either divests the contractor of his property interest in his chose in action against the property owner or gives the mechanic's lienor a specific and perfected lien, for federal tax purposes. Even if we were to follow the New York cases, they would not take us this far. In Cranford Co. v. L. Leopold & Co., supra, the lienor was held entitled to priority by analogy to a purchaser, under I.R.C. § 3672—a contention with which we shall deal later. The case does not purport to give the lienor any specific property right beyond the status of a "statutory assignee." The other case on which appellee relies, United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 297 N.Y. 31, 74 N.E.2d 226, is even more remote to the issues now under discussion, for it deals with the rights of a surety who has paid the subcontractor's claims. The surety was held to have perfected his claim to the trust fund as of the date when he first gave the required bond. This allowed the surety an earlier date of perfecting than even the subcontractor would have had, and antedated also the government's receipt of assessment lists. Whether or not such a predating of the surety's rights would be upheld as against perfected federal tax liens under the more recent decisions of the Supreme Court, we need not now decide. The case as it stands adds nothing to our knowledge of New York's appraisal of the status of the mechanic's lienor as such.

▮ Our reading of the statutes and the cases leads us to conclude that, at least for purposes of federal taxation, Kings must be considered essentially like the holder of an attachment or a garnishment lien before it has matured into a judgment. The use of a trust fund rationale by New York in order to give the mechanic's lienor this kind of lien may be the result of the severe restrictions ordinarily imposed by that law on the attachment of debts. See N.Y. Civil Practice Act § 916. Until and unless the mechanic's lienor perfects his rights

---

[1]. In the special case of securities, I.R.C. § 3672(b) protects what may broadly be considered as bona fide purchasers, even if the government has filed notice of its lien. We are not concerned with that special case here.

to the trust fund by filing a timely civil action in accordance with § 75 of N.Y. Lien Law, the contractor retains a paramount interest in the property in question, so that the debt belongs to him and is subject to federal levy as such. Furthermore, until such a suit is brought, the fact and the amount of the final mechanic's lien remain uncertain. This means that for federal tax purposes the state lien is general and inchoate until such time. People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348; United States v. Security Trust & Savings Bank of San Diego, supra, 340 U.S. 47, 71 S. Ct. 111; United States v. Acri, supra, 348 U.S. 211, 75 S.Ct. 239; United States v. Liverpool & London & Globe Ins. Co., supra, 348 U.S. 215, 75 S.Ct. 247; United States v. Scovil, supra, 348 U.S. 218, 75 S.Ct. 244. And see Kennedy, The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien, 63 Yale L.J. 905 (1954).

■■■ Kings never sued to enforce its trust, and Standard's action in refusing to surrender the moneys it held to the tax collector cannot be taken as a legal substitute for such action. The mere fact that in this case Preferred did not contest the validity of Kings' claim does not serve to perfect it as a matter of law before suit or payment. Standard, or any other similarly situated property owner, is not in a position to have either the knowledge or the legal status to assert possible defenses to the claims of the mechanic's lienor; thus it should not be allowed to compromise finally either Preferred's or Kings' rights to the trust fund. Nor can Standard's refusal to surrender these moneys be justified by reference to provisions in its contract with Preferred concerning payment of subcontractors. Such private contractual arrangements are clearly subordinate to the paramount rights of the government to levy on the property of its taxpayers. United States v. Manufacturers Trust Co., 2 Cir., 198 F.2d 366. At the most, Standard's action can be argued to have perfected Kings' lien when it was taken. But this in itself postdated the attachment of the government's lien, for Standard's letter was a response to the notice of lien sent it by the tax collector.

■■■ Our analogy to the principles of attachment and garnishment liens is supported here by the clear indicia that New York contemplates some kind of perfecting by the mechanic's lienor of his interest in the trust fund. But it seems extremely doubtful to us that any trust fund device could ever supersede federal tax liens, even if the state purported to omit all perfecting requirements. To be fully choate a lien must attach to specified property, and the amount of the lien must be precisely established. Whether any general trust fund, coming into existence when the mechanic's lienor completes his services, can ever be sufficiently specific to meet these criteria is thus questionable. People of State of Illinois ex rel. Gordon v. Campbell, supra, 329 U.S. 362, 67 S.Ct. 340. Moreover, such a "lien" would not be accompanied by a change in title or possession, which was found in United States v. Gilbert Associates, Inc., supra, 345 U.S. 361, 73 S.Ct. 701, to be a prerequisite to the perfecting of liens.

■■■ Thus as of the crucial date of attachment of the government's lien the trust fund gave Kings no more than an inchoate and general lien. And the mechanic's lien on the improved real estate was then in no better state. In one sense this second lien is of course irrelevant, for it attached to different property, i. e., Standard's real estate, than did the government's lien, which was concerned only with the debt owed to Preferred. But, more significantly, this lien was not perfected until after the government's lien attached, and the New York law is clear that such lien is a complete nullity until notice thereof has been filed. Riverside Contracting Co. v. City of New York, Sup., 148 N.Y.S. 281, affirmed 165 App.Div. 972, 150 N.Y.S. 1109, affirmed 218 N.Y. 596, 113 N.E. 564, Ann.Cas. 1918C, 1075. As of August 21, 1947, the

latest date of attachment of the government's lien, Kings had as yet acquired no lien on the real property at all.

■ The mere attachment of the government's lien gives it a fully perfected claim superior to all except mortgagees, pledgees, purchasers, or judgment creditors of the taxpayer. I.R.C. § 3672. In this case the government sought the fullest measure of protection by filing notices of its lien by August 21, 1947, in Kings County, where the taxpayer Preferred resided. Judge Abruzzo found this filing fatally defective, presumably under the last sentence of N.Y. Lien Law § 240, subd. 2, enacted pursuant to I.R.C. § 3672(a) (1). The New York law provides: "If the property is in the city of New York at the time the lien arises, the notice or certificate shall be filed in the county within the city of New York or in the town or city where the owner, or each of several owners who are residents of the state, resides at the time the lien arises, and also in the county where the property is situated." While we are disposed to disagree with the conclusion below that a debt should be considered to have a situs apart from that of its owner, the creditor, see Investment & Securities Co. v. United States, 9 Cir., 140 F.2d 894, we need not finally decide that issue here, since we are convinced that Kings does not fall within any of the special classes against whom filing is required.

The only claim made by Kings to come within the protection of I.R.C. § 3672 is that it should be considered as akin to a purchaser. This was in effect the holding of Cranford Co. v. L. Leopold & Co., supra. Since then, the Supreme Court has had occasion to discuss the definition of "purchaser" in this context, in a case dealing with a landlord's distress lien. United States v. Scovil, supra, 348 U.S. 218, 221, 75 S.Ct. 244, 247. In refusing to consider the landlord a purchaser, the court said: "A purchaser within the meaning of § 3672 usually means one who acquires title for a valuable consideration in the manner of vendor and vendee." It is obvious without further discussion that Kings, even as statutory assignee of a trust fund, is not a purchaser for federal tax purposes.

The judgment of the district court is therefore reversed and the action is remanded for the entry of a judgment awarding priority to the government's lien over the claim of Kings.

Reversed and remanded.