Joseph A. Cox, S.
This decedent died on January 1,1959 and the administrators of his estate now are accounting. Their account lists claims of the United States Treasury Department for additional income taxes, plus penalties and interest, for the years 1952, 1954,1955, 1956 and 1958 amounting to $137,632.78, and gift taxes, plus penalties and interest, for the years 1954, 1955 and 1958 amounting to $9,177.94. An assessment was made by the Collector of Internal Revenue on July 20, 1962 and a final proof of claim, supplementing earlier claims, was served on the administrators in January, 1963. The administrators have allowed but - have not paid the claims in the total of $146,810.72. The account further .states that the Treasury *142 Department has asserted a proposed deficiency for income tax liability amounting to $301,617.73.
The former wife of the decedent who procured a decree of divorce from him in New Jersey in 1956 asserts a claim for alimony payable under the provisions of that decree. Prior to the making of that decree the decedent and his wife had entered into a stipulation under which he agreed to pay her $10,000 a year in installments and it was further agreed that, in the event of his death, the payments of alimony should “ become a lien and be chargeable upon the estate ” of the decedent while the former wife should remain unmarried. This stipulation was attached to the divorce decree and was made part of the judgment subject to the continuing jurisdiction of the New Jersey court. The former wife now claims an unpaid installment for the month of December, 1958 and unpaid installments for a period subsequent to the decedent’s death as well as an additional amount computed on her life expectancy. The claims for past-due installments and the contingent claim for future installments are not disputed and the claimant would be entitled to >a decree providing for payments to her and the creation of a reserve to protect her future claims if estate assets were available for such purpose (Matter of Grimley, 200 Misc. 901; Matter of Rabinowitz, 201 Misc. 896, affd. 281 App. Div. 809). However, it is acknowledged that the estate is insolvent.
This claimant asserts that the divorce decree created a lien which is superior to the Federal tax claim. The statutory priority* created by section 191 of title 31 of the United States Code may be avoided only upon facts establishing a specific lien upon property either seized and appropriated to the satisfaction of the lien or set apart from the general property of the decedent (Matter of Gruner, 295 N. Y. 510, 521). Here the exact amount of the debt owed to the claimant had not been judicially allowed at the date of the decedent’s death and the claim of the divorced wife could not be enforced without such judicial determination. In this circumstance the asserted lien was merely an inchoate or general lien which created no priority as against the statutory lien of the United States (United States v. Texas, 314 U. S. 480; Matter of Lincoln Chair & Novelty Co., 274 N. Y. 353; United States v. Kings County Iron Works, 224 F. 2d 232; Ann. 94 ALR 2d 748).
No objection has been made to the fact that the administrators have allowed the claim for taxes in their account and any question as to the validity of a Federal tax claim or the accuracy of any assessment is not a matter which may be disposed of by this court (Matter of Smathers, 249 App. Div. 523; Matter of *143 Walton, 20 A D 2d 386; Matter of Feinberg, 43 Misc 2d 191; Matter of Herter, 15 Misc 2d 184). Proof refuting the tax claim has not been tendered at this point in the proceeding and, in view of the absence of jurisdiction in this court to determine the validity of the tax claim, a hearing will not be conducted to receive evidence as to the basis for the tax assessment.
On December 15, 1958 the claimant Hoffman drew his company check to the order of the decedent in the amount of $3,500. This check was deposited in a bank to the decedent’s credit. On January 2, 1959, the day following the decedent’s death, Hoffman obtained the certification of a check in the amount of $3,500, dated December 31, 1958, drawn to the order of Hoffman’s company and signed by ithe decedent. Thereafter, this check was deposited to the credit of Hoffman’s company. Pacts as to the manner in which this check came into Hoffman’s possession have not been presented. Concededly the signature on the check is the decedent’s and the other writing on the check is Hoffman’s. The claimant’s possession of the check permits the inference that it was delivered for consideration (Matter of Kolben, 203 Misc. 1012). While the death of the maker did not terminate his liability upon the instrument it did operate to revoke ithe authority of the payee to collect from the drawee (Matter of Kolben, supra; Matter of Bakri, 109 N. Y. S. 2d 654; cf. Uniform Commercial Code, § 4-405, eff. Sept. 27, 1964).
Hoffman contends that he is not merely a general creditor of the estate but is a secured creditor in a position prior to that of the Government (U. S. Code, tit. 26, § 6323; Bankers Trust Co. v. Equitable Life Assur. Soc. of U. S., 22 A D 2d 579) because of the alleged fact that on December 15, 1958 the decedent delivered to him certain shares of corporate stock as security for a loan, evidenced by the Hoffman check delivered to the decedent on that date, and also as security for telephone charges incurred by the decedent in Hoffman’s office. Two witnesses testified that on that day the decedent confirmed that he had delivered particular securities ¡to Hoffman as security for the $3,500 loan and for the payment of telephone bills then in an undetermined amount. The testimony was that the decedent had been sharing Hoffman’s office, had availed himself of the telephone in that office for some years and there had been other transactions between the decedent and Hoffman none of which had been secured by collateral. Nothing is indicated as to the reason Hoffman exacted security or the decedent voluntarily tendered security on this special occasion. Neither is there any explanation of the purported fact that, after this long association and the decedent’s regular payment of telephone bills, *144 security should have been posted to insure payment of the current telephone bill. The claim that this minor charge was secured by a pledge of stock, and thus this claimant is removed from the category of a general creditor as to his entire claim, casts a shadow upon the testimony in support of the assertion that any security was given for any purpose.
The fact was that the decedent kept a number of securities in a locked cabinet in Hoffman’s office and Hoffman had a key to this cabinet. It cannot be said that this was the only key but there is no direct proof that the decedent also had access to this cabinet. The securities allegedly constituting the pledge were in this cabinet prior to December 15, 1958 and remained in the cabinet until the removal of all of its contents sometime after the decedent’s death. A significant fact is that Hoffman did not assume separate control of the securities claimed to have been delivered to him as collateral.
One of the witnesses to the alleged conversation on December 15,1958 for a time represented one of the administrators of this estate but when the attorney for the coadministrator suggested that steps be taken to recover the securities in Hoffman’s office and to recover the proceeds of the $3,500 check, this witness made no disclosure of the purported conversation covering the alleged pledge. On March 9, 1959 this witness, on behalf of one of the administrators, wrote to Hoffman demanding the securities but in such letter he made no reference to any pledge or any agreement pertaining to collateral.
The contention that on December 15, 1958 Hoffman made a loan to the decedent secured by collateral has not been established by credible evidence. This claimant is a general creditor of the estate for the principal amount of $3,500 represented by the check of December 31, 1958, and for unpaid telephone bills. The amount chargeable to the estate upon the latter item is found to be $437.48.
The public accountants engaged by the administrators undertook certain of the tasks normally assumed by fiduciaries and their attorneys. Any allowance to them must be based upon other services rendered by them because of the particular nature of the assets in this estate. The total fee of these accountants is fixed in the amount of $5,000 against which the amounts heretofore paid are to be credited. The fee of attorney Wolf son is fixed in the total sum of $2,500 with disbursements of $45.50, against which allowance the amount of $1,750 heretofore paid to him is to be credited.
Other issues in this proceeding are reserved pursuant to the agreement of counsel. In view of the further tax claim it appears *145 probable that a final settlement of the account of the administrators may not be made at this time, but any such determination is reserved until the conclusion of this proceeding. Any parties so desiring may submit an intermediate decree disposing of the issues ruled upon in this opinion.