EDWARD P. BATES, Respondent, *v.* SALT SPRINGS NATIONAL BANK of Syracuse, Appellant, Impleaded with Others, Respondents.

HENRY W. MILLAR and JOHN L. MURRAY, Respondents, *v.* SALT SPRINGS NATIONAL BANK of Syracuse, Appellant, Impleaded with Others, Respondents.

1. MECHANICS' LIEN — RIGHTS OF MATERIALMAN AND CONTRACTOR. Under the Mechanics' Lien Law (L. 1885, ch. 342), a laborer or material-man has no preferential right to be paid out of the sums due the contractor, until he files his notice of lien.

2. BUILDING CONTRACT — ASSIGNMENT OF CONTRACT MONEYS. In the absence of anything to the contrary in a building contract, and before any notice of lien is filed, the contractor may assign to his creditor, in payment of his debt, the whole or any portion of the moneys due or to become due under the contract, and the assignee acquires a preference over a subsequent lienor.

3. PAYMENT TO CONTRACTOR CONDITIONED UPON ABSENCE OF LIENS. A provision in a building contract between private parties, that no payment shall be made until the contractor has produced a certificate that there are no liens filed against the premises or building, is presumably for the benefit of the owner only and not for the protection of laborers or materialmen, and does not deprive a creditor of the contractor, holding an assignment, of which the owner has notice, of moneys due or to become due under the contract, of a right to such moneys, to the extent of his debt, as against subsequently filed liens of laborers and materialmen.

4. WAIVER OF OBJECTION BASED ON NON-PRODUCTION OF CERTIFICATE OF NO LIENS. The election by the owner, under such a building contract, to complete the building on abandonment by the contractor, and the payment into court by the owner of the portion of the final payment remaining in his hands after deducting the costs of completion, for the determination of claims asserted by the assignee of the contractor and by subsequent lienors, constitute a waiver of any objection that the money unpaid upon the contract was not due by reason of the non-production of a certificate as to there being no liens.

*Bates* v. *Salt Springs Nat. Bank*, 88 Hun, 236, reversed.

(Argued October 11, 1898; decided November 22, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fourth judicial department, entered

November 6, 1895, affirming a judgment entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William G. Tracy* for appellant. The assignment of Dickison & Allen, dated February 14, 1891, as to the owner and contractors, effectually transferred to the bank the last payment of twenty per cent under the contract subject to the completion of the contract by the contractors or by the owner as provided in the contract itself. (*Field* v. *Mayor, etc.,* 6 N. Y. 179; *Hall* v. *City of Buffalo,* 1 Keyes, 193; *Stover* v. *Eycleshimer,* 3 Keyes, 620; *Munger* v. *Shannon,* 61 N. Y. 251; *Brill* v. *Tuttle,* 81 N. Y. 454; *Jones* v. *Mayor, etc.,* 90 N. Y. 387; *Crouch* v. *Muller,* 141 N. Y. 495; *Hirsh* v. *Auer,* 146 N. Y. 13, 19.) The assignment just as effectually transferred to the bank the last payment as in the case of the owner and contractor. The lienors obtained no greater rights or interests than the contractors had at the time the liens in question were filed, and the contractors having transferred their rights and interests to the bank, the same could not be acquired by the subsequent filing of the liens. (L. 1896, ch. 915; *Payne* v. *Wilson,* 74 N. Y. 348, 356; *Gibson* v. *Lenane,* 94 N. Y. 183, 186; *Lauer* v. *Dunn,* 115 N. Y. 405, 408; *McCorkle* v. *Herrman,* 117 N. Y. 297, 303, 304; *Stevens* v. *Ogden,* 130 N. Y. 182, 186; *Beardsley* v. *Cook,* 143 N. Y. 143, 148.) The lien claimed by Edward P. Bates is invalid. (*Ringle* v. *W. I. Works,* 149 N. Y. 439, 443.)

*Edwin H. Risley* for Edward P. Bates, respondent. The Salt Springs National Bank stands in the position of a contractor; it was the principal while Dickison & Allen, Bates and the others were contractors and sub-contractors. (*Beardsley* v. *Cook,* 143 N. Y. 143, 148; *M. & T. Nat. Bank* v. *Winant,* 123 N. Y. 265, 270; *Hofgesang* v. *Meyer,* 2 Abb. N. C. 111; *Stevens* v. *Reynolds,* 7 N. Y. Supp. 771; *Miller* v. *Mead,* 127 N. Y. 544, 549; *Royce* v. *Watrous,* 73 N. Y.

597; *Weyh* v. *Boylan,* 85 N. Y. 394, 398; *Shapley* v. *Abbott,* 42 N. Y. 443, 448.) The rights of Bates, if not those of the other lienors, are superior to those of the bank and to those of Ross, the receiver of Dickison & Allen, both by the contract and by law. (*Moran* v. *M. H. Bank,* 32 N. Y. S. R. 102, 104; *Couturier* v. *Hastie,* 5 H. L. Cas. 673; *English* v. *Lee,* 63 Hun, 572, 574; *Trustees of Union College* v. *Wheeler,* 61 N. Y. 88, 105; *M. & T. Nat. Bank* v. *Mayor, etc.,* 58 How. Pr. 207; *Murphy* v. *Bowery Nat. Bank,* 30 Hun, 40; *Schafer* v. *Reilly,* 50 N. Y. 61; *Greene* v. *Warnick,* 64 N. Y. 220; *Cutts* v. *Guild,* 57 N. Y. 229; *Pell* v. *Baur,* 133 N. Y. 377, 382; *Otis* v. *Dodd,* 90 N. Y. 336.) The liens are valid and the findings and judgment thereon should be sustained. (*Morgan* v. *Taylor,* 24 N. Y. S. R. 60; *P. U.* v. *Nixon,* 1 E. D. Smith, 671.)

*William Kernan* for Millar & Murray, respondents. The assignment by Dickison & Allen to the Salt Springs National Bank of February 14, 1891, the only assignment prior to the filing of the lien of Cahill Brothers, is not good as against the lien of Cahill Brothers assigned to Millar & Murray. And they, as such assignees, are entitled to the amount of such lien and interest thereon from May 31, 1892, as against the Salt Springs National Bank. (*Schafer* v. *Reilly,* 50 N. Y. 61; *Cutts* v. *Guild,* 57 N. Y. 229, 232; *Greene* v. *Warnick,* 64 N. Y. 220; *M. & T. Nat. Bank* v. *Mayor, etc.,* 58 How. Pr. 207; 27 Hun, 467; *Murphy* v. *Bowery Nat. Bank,* 30 Hun, 40; *Hackett* v. *Badeau,* 63 N. Y. 476; *Spicer* v. *Snyder,* 34 N. Y. S. R. 376.) Millar & Murray, as assignees of Cahill Brothers, if it shall be held they are only entitled to the $1,672.92 for extras, are entitled to the costs and disbursements of the action, either to be paid out of the money in court or by the Salt Springs National Bank which has disputed and litigated their claim to the money for extras. (L. 1885, ch. 342, § 14.)

*S. M. Lindsley* for Utica Planing Mill, respondent. The provision in the contract for the erection of the building, that

no payment should be made to the contractors until they obtained a certificate from the Oneida county clerk, showing that at the date of payment no liens had been filed against the premises or building which were then unsatisfied, inured to the benefit of the lienors, was for their protection, and nothing became or was payable to Dickison & Allen, the contractors, or to the Salt Springs National Bank, their assignee, until the liens were paid and discharged of record. (*Murphy* v. *Bowery Nat. Bank*, 30 Hun, 40; *M. & T. Nat. Bank* v. *Mayor, etc.*, 58 How. Pr. 207; 27 Hun, 467; *Hackett* v. *Badeau*, 63 N. Y. 476; *Spicer* v. *Snyder*, 34 N. Y. S. R. 376.) On fair view and consideration of the contract between the owners and Dickison & Allen, contractors for the construction of the building, it is apparent that it was the intention of the parties that such persons as might have the right to file mechanics' liens should be protected and paid. (*M. & T. Nat. Bank* v. *Mayor, etc.*, 58 How. Pr. 207; 27 Hun, 467; *Murphy* v. *Bowery Nat. Bank*, 30 Hun, 40; *M. & T. Nat. Bank* v. *Winant*, 16 N. Y. S. R. 902; 123 N. Y. 265.) The Mechanics' Lien Law is to be liberally and favorably construed in favor of the lienors. (L. 1885, ch. 342, § 25.)

GRAY, J. These actions were brought for the foreclosure of mechanics' liens and were consolidated by order of the court. The question presented is whether the appellant, the Salt Springs National Bank of Syracuse, as the assignee of the contractors, is entitled to a fund, which has been paid into court to abide the event of the action, as against the various parties who have filed liens for work done and materials furnished in the execution of the contract. It appears that in December, 1890, the firm of Dickison and Allen entered into a contract with the trustees of the Masonic Hall and Asylum Fund for the erection of a Masonic home near Utica. The contract price of $139,500, was to be paid in twelve installments; the last of which, being stated at the sum of $28,500, was payable when the buildings were completely finished and accepted. After the making of said contract, and in Febru-

ary, 1891, before any work had been performed under the contract, the contractors assigned, in writing, to the defendant, the Salt Springs Bank, the last payment to be made on said contract as collateral security for their existing and future indebtedness to the bank. Notice of this assignment was given to the trustees on April 28th, 1892. On May 31st, and on June 4th following, mechanics' liens were filed by the defendants Cahill and Utica Planing Mills. On the latter date the contractors made a further assignment to the Salt Springs-Bank, as collateral security, of all payments then, or which might thereafter become, due and payable on said con-tract, including extra work. Notice of this assignment was received by the trustees on June 6th. Thereupon, the con-tractors, being insolvent, abandoned the work and requested the trustees to finish the buildings under the contract. Between June 5th and July 17th, 1892, other liens, aggregat-ing over $18,000, were filed by the creditors of the contractors. At the time of the abandonment of the work, there was unpaid upon the contract, including extra work, the sum of $33,067.31. The trustees in completing the work on the buildings under the contract·expended the sum of $8,478.32. Deducting from that amount certain damages for delay and the expenses of completing the buildings, the sum which would have been payable to the contractors, if they had com-pleted their contract, and which is now to be disposed of in this action, is $23,788.49. The Salt Springs Bank, on the 6th and on the 9th of June, 1892, recovered judgments against the contractors aggregating in amount the sum of upwards of $38,000, and, in proceedings supplementary to execution, the defendant Ross was appointed receiver of the joint and sev-eral property of the contractors. It was found that the indebt-edness unpaid to the bank, inclusive of interest, exceeded the sum of $25,000.

The General Term of the Supreme Court has affirmed a judgment of the trial court, under which the parties who had filed mechanics' liens were adjudged to be entitled to be paid the amount of their respective liens in preference to the Salt

Springs Bank.   The theory upon which this conclusion has
been reached is that, under the proper construction of a cer-
tain clause in the contract, it was intended by the parties
thereto that persons who labored for, or furnished, materials
to the contractors should be protected.   The clause which
received this construction reads as follows : " It is also agreed
that no payment shall be made hereunder until the said parties
of the second part, (meaning the contractors), shall have
obtained a certificate from the clerk of Oneida county, show-
ing that at the date of such payment, no liens or claims have
been recorded or filed against said premises or building, which
are then unsatisfied of record."   Upon the interpretation to be
given to this provision must depend the decision of the ques-
tion involved in this case, whether the amount unpaid upon
the contract belonged to the bank by virtue of its assignment,
or whether it belongs to the lienholders to the extent of their
liens.   In considering that question the learned General Term
discarded the suggestion of the respondents, that the amount
unpaid upon the contract was not due by reason of the provision
that no payment should be made until the contractors produced
the county clerk's certificate that no liens were unsatisfied ; and,
very properly, held that if the assignment to the bank carried
the right to the amount unpaid on the contract, it was the duty
of the court to set aside the liens, so that the bank could pro-
cure the proper certificate and thus obtain the fund to which it
was in fact entitled.   The opinion held that under the Mechanics'
Lien Law, (Chap. 342, Laws of 1885), the laborer, or material-
man, has no preferential right to be paid out of the sum due
the contractor, until he files his notice of lien.   In the absence
of anything to the contrary in the contract and before any notice
is filed, the contractor may assign to his creditor, in payment of
his debt, the whole, or any portion, of the moneys due, or to
become due, under the contract and the assignee acquires a
preference over a subsequent lienor.   This view was based
on abundant authority and is indisputable.   (*Brill* v. *Tuttle*,
81 N. Y. 454; *Lauer* v. *Dunn*, 115 ib. 405; *McCorkle* v.
*Herrman*, 117 ib. 297; *Stevens* v. *Ogden*, 130 ib. 182; *Beards-*

*ley* v. *Cook*, 143 ib. 143.) The principle to be extracted from the cases is that a lienor obtains no greater right to the moneys payable by the owner, than the contractor has and if the latter has assigned to a creditor, *pro tanto*, the assignee gains a preference over subsequent liens. The court, however, adopting the view that the provision, or clause, of the contract in question prohibited payments, until the county clerk's certificate was furnished, reached the conclusion that it had for its purpose the protection of the lienors, the laborers and the materialmen, as well as the protection of the trustees. The reasoning to this conclusion was made upon the authority of certain cases in this court, which were thought to be controlling, viz.: *The Merchants and Traders' National Bank* v. *The Mayor* (97 N. Y. 355), and *The Mechanics and Traders' National Bank* v. *Winant* (123 N. Y. 265). These cases related to contracts made by the city of New York in 1875 and 1876. They contained, by direction of an ordinance of the city, this clause: " The said party of the second part (meaning the contractor), hereby further agrees that he will furnish said commissioner (meaning the commissioner of public works), with satisfactory evidence that all persons who have done work or furnished materials under this agreement, and who may have given written notice to the said commissioner, * * * have been fully paid or secured such balance. And in case such evidence be not furnished as aforesaid, such amount as may be necessary to meet the claims of the persons aforesaid (meaning the persons who had done work or furnished materials), shall be retained from any moneys due the said party of the second part under this agreement until the liabilities aforesaid shall be fully discharged, or such notice withdrawn." Those cases held, in effect, that the purpose of that provision was to protect those employed under the contractor. That was its only purpose, and the reason for it was obvious. At the time when the contracts were made, there was no lien law relating to work done and materials furnished on public works in cities. Such an act was not passed until 1878 (Chap. 315, Laws of 1878). The construction of the ordinance which required such a provision in city contracts,

as given in the *Bank Cases* (*supra*), was that it did secure to persons furnishing labor and material to contractors with the city some of the advantages, which the Lien Laws of the state gave to mechanics and materialmen. The city in such a contract assumed no express liability to pay them and could not be sued therefor; but it was placed under the implied obligation to hold, as trustee, the unpaid balance due upon its contract for the benefit of such persons. In the *Bank* v. *Winant* (*supra*), the opinion followed the case of *Bank* v. *The Mayor* (*supra*), as to the nature of the contract; but it dealt with a question of the effect of the sub-contractor's failure to file the notice, provided for in the clause of the contract, with the comptroller, as the city official designated, and it was held that the plaintiff could not raise such an objection. The distinction between those cases and the cases where the contract is between private parties is marked; for, in the latter, a lien could be acquired which would be binding upon the owner and, therefore, the presence of a clause in the contract dispensing the owner from the obligation of payment, if there were liens upon the building, is only for his relief and protection. To this effect is *Lauer* v. *Dunn* (*supra*). In *Lauer* v. *Dunn*, the provision was that "in case any lien or liens shall exist upon the property at the time or times when any payment is to be made such payment, or such part thereof as shall be equal to not less than double the amount of or for which such lien or liens shall or can exist, shall not be payable at the said stipulated times, notwithstanding anything in this agreement to the contrary contained." It was there held of that provision, that it was for the protection of the owner simply. In that case, if, when moneys were payable to the contractor, liens existed, the owner might reserve double the amount claimed under the liens from the funds in his hands; while, in the present case, no payment should be made. The plaintiffs in that action were sub-contractors for the construction of buildings and received from the contractors a written order on the owner for the payment of a certain sum. We held that the order amounted in law to an assign-

42

ment *pro tanto* of the funds in the owner's hands and as such it bound that fund in preference to liens which were subsequently filed. The provision in the contract was for the protection of the owner and, after notice of the order, which was in effect an assignment of the contractor's interest in the money in the owner's hands, the owner was bound to apply the fund in his hands to its payment and to no other purpose. That decision is controlling upon the decision in the present case : for there is no material distinction to be made in the effect of the respective clauses under consideration.

The reasoning in the New York city cases is not applicable to create a distinction as against the authority of *Lauer* v. *Dunn* in the decision of this case. It is not quite consistent with reason, or with the motives which usually influence parties in the making of contracts, that we should regard the clause in the present contract as inserted otherwise than for the protection of the trustees who had contracted for the construction of the buildings. The owner, in such a case, is only desirous to be protected, in his payments due under the contract, against the liens of laborers and materialmen and that purpose is accomplished by requiring the contractor, as a condition precedent to payment, to produce a certificate as to no liens being filed. Of course, the contractor is not interested in the insertion of such a provision. To infer from the presence of the clause a design to protect third parties, requires something more definite to that effect in writing, in order to make the inference reasonable and natural. To attribute to an ordinary business agreement between parties an altruistic purpose requires some support in the language. In its absence, the inference to be drawn, in the interpretation of its clauses, is subject to the usual rules which govern in the construction of legal instruments, which define the respective undertakings and obligations of the parties.

Nor does the fact that the trustees completed the buildings affect the right of the plaintiff. They elected to do so and, therefore, such part of the last payment as remained in their hands, after deducting the cost of completion, became appli-

cable to the payment of the claim of the assignee of the contractor. (*Beardsley* v. *Cook,* 143 N. Y. 143, 148.) That election and the payment of the moneys into court are a waiver of any objection that the moneys unpaid upon the contracts were not due, by reason of the non-production of the county clerk's certificate as to there being no liens. (*Beardsley* v. *Cook, supra.*) Under the doctrine of equitable assignments, it is of no consequence to the relative rights of assignees and lienors that the money may not be immediately payable.

Concluding, therefore, as I think we are bound to do under the authority of *Lauer* v. *Dunn,* that this clause in the contract was for the benefit of the trustees only, it follows that the assignment by the contractor to the Salt Springs Bank of the last payment upon the contract, executed upon the making of the contract, operated as an equitable assignment of the moneys remaining unpaid upon the contract, when notice of it was given to the trustees, and gave to the assignee a preference over liens subsequently filed. There is no question as to there being an indebtedness from the contractors to the bank and upon notice of the assignment to the trustees, the effect was to bind the moneys remaining unpaid upon the last installment in favor of the bank's claim. There had been an equitable assignment of the moneys, which only required for its enforcement a fund to fasten upon and a notice to the holder of the fund. The bank acquired the right of the contractors; who lost their interest in, and dominion over, the fund and its assignment was subject to no other equities than such as the trustees may have had against the contractors at the time they had notice of the assignment.

It follows from the views expressed that the judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

All concur, except O'BRIEN, J., dissenting, and MARTIN, J., not sitting.

Judgment reversed, etc.