DETERMINED IN THE

# THIRD DEPARTMENT

IN THE

## APPELLATE DIVISION,

𝕸𝖆𝖗𝖈𝖍, 1899.

---

ALEXANDER E. BRACE and EUGENE PIERCE, Appellants, *v.* THE CITY OF GLOVERSVILLE and Others, Defendants, Impleaded with WILLIAM HOLDEN and CHARLES HOLDEN, Respondents.

*Mechanic's lien — an assignment of a contract or of money due thereunder must be filed as against a lien on real estate but not as against a lien on a public fund.*

Section 15 of chapter 418 of the Laws of 1897, the "Lien Law," providing that "no assignment of a contract for the performance of labor or the furnishing of materials for the improvement of real property, or of the money or any part thereof due or to become due therefor, nor an order drawn by a contractor or sub-contractor upon the owner of such real property for the payment of such money, shall be valid until the contract or a statement containing the substance thereof, and such assignment or a copy of each or a copy of such order be filed in the office of the county clerk of the county wherein the real property improved or to be improved is situated," applies only to such notices of lien as are filed under section 3 of that act against the real estate improved, and not to notices of lien filed under section 5 of said act against funds in the possession of the State or a municipality held for the purposes of public improvements upon real property belonging to the State or the municipality.

APPEAL by the plaintiffs, Alexander E. Brace and another, from a judgment of the Supreme Court in favor of the defendants William Holden and Charles Holden, entered in the office of the clerk of the county of Fulton on the 3d day of November, 1898, upon the decision of the court rendered after a trial before the court without a jury at the Fulton Trial Term.

APP. DIV.—VOL. XXXIX.　　4

The action was brought to foreclose a mechanic's lien entered by the plaintiffs against a certain fund due from the city of Gloversville to one Langham for building a schoolhouse on Oak street in that city. The Trial Term awarded judgment to the defendants William and Charles Holden, and against the plaintiffs, and from such judgment this appeal is taken.

*H. D. Wright*, for the appellants.

*Frank Talbot*, for the respondents.

PARKER, P. J.:

There is no dispute in this action concerning the amount still unpaid and owing by the city upon the contract for building the schoolhouse in question, and the city stands ready to pay it when the court shall determine to whom it is due.

The plaintiffs furnished materials and did work for the contractor Langham upon such schoolhouse, and on March 19, 1898, filed a notice of lien for the sum of $700 against the moneys applicable to the payment of such contract; and again, on June 11, 1898, they filed another lien against such fund for the sum of $324.76.

Langham made default, and the city completed the building, and when finished there was the sum of $1,449.55 in its hands, balance of the contract price still unpaid to Langham.

On the 18th of February, 1898, Langham gave to the defendants William and Charles Holden a written order on the "Board of Education of the City of Gloversville" for $2,200, with directions to pay it to them when due to him, and stating that it was for lumber and materials furnished and to be furnished by them to him for use on the Oak street school.

A copy of such written order was, on February 23, 1898, filed in the Fulton county clerk's office, and on March 12, 1898, the original order was served on the president of the board of education, and a copy thereof on the clerk of such board.

On March 19, 1898, Langham was indebted to the Holdens for materials so furnished in the sum of $1,970.40. The Holdens claim, by virtue of this order, the whole of the balance of $1,449.55 so in the hands of the city.

The plaintiffs claim that their liens, although entered afterwards,

take precedence over this order, because there was not filed with it "the contract, or a statement containing the substance thereof," as required by section 15 of chapter 418, Laws of 1897, known as the " Lien Law."

There seems to be no dispute that the order was sufficient to operate as an equitable assignment of the fund, and to cut off plaintiffs' liens, provided it has been properly filed under the provisions of such section, and here arises the single question presented to us.

Section 15 provides that " No assignment of a contract for the performance of labor or the furnishing of materials for the *improvement* of *real property*, or of the money or any part thereof due or to become due therefor, nor an order drawn by a contractor or subcontractor upon the *owner* of *such real property* for the payment of such money shall be valid, until the contract or a statement containing the substance thereof *and* such assignment or a copy of each or a copy of such order, be filed in the office of the county clerk of the county wherein the real property improved or to be improved is situated, and such contract, assignment or order shall have effect and be enforceable from the time of such filing."

The Holdens claim that this section 15 has no application whatever to liens filed for work and materials done and furnished on account of public improvements, and after a careful examination of the statute, I am of the opinion that in this claim they are correct.

Prior to the passage of the " Lien Law " above cited, there were two separate acts regulating the filing of mechanic's liens, one of 1885 (Chap. 342), where the lien was against real property for claims arising for the improvement thereof ; the other of 1878 (Chap. 315), where the lien was against the fund in the control of a city and applicable to the payment of public improvements made by it therein. In neither of those statutes was there any provision similar to those contained in section 15, above quoted. By chapter 915 of the Laws of 1896, section 5 of the act of 1885 was amended, and then for the first time, assignments and orders which transferred from the contractor the moneys or any portion thereof, accruing upon the contract, were required to be filed. But, manifestly, this amendment of the act of 1885 did not affect the act of 1878. In contracts for public improvements no such restriction existed, and assignments could be made and orders drawn for moneys due thereon

without filing the same.    Such was the condition of the law on this subject when both the act of 1885, as amended, and that of 1878 were repealed, and the Lien Law of 1897 was enacted in the place of them.

By that law " mechanics' lien on real property," and " liens under contracts for public improvements " are kept separate and distinct. Section 3 provides for the one, section 5 for the other.    Sections 9, 10 and 11 provide what the notice of lien shall contain, and when and where and how it shall be filed and served in the former case, and section 12 provides for similar matters in the latter case.    The contents of the notice and the place of filing and mode of service are distinctly different in the two cases.

It will be observed that the lien authorized by section 3 is described as one for labor done or materials furnished for the " improvement of real property," and the same phrase is used in other sections which refer to that particular lien.    Thus, section 7 provides what shall be the effect of any payment made by the owner upon a contract for the " improvement of real property " in advance of its terms, etc., and section 13 regulates the priority of liens for materials furnished and labor performed in the " improvement of real property."    That seems to be the phrase by which the statute designates the lien authorized by section 3, and when, in section 15, we find it providing that " no assignment of a contract for the performance of labor or the furnishing of materials for the *improvement of real property* * * * shall be valid, * * *,*"* it would seem to follow that such section was intended to apply to the lien authorized by section 3.    The lien under which plaintiffs are claiming was authorized by section 5.    The contract referred to in that section is not a contract for the " improvement of real property ; "  . it is there designated as a " contract for public improvements."

The intent of this statute seems to be to continue the distinction in this respect which existed between the statute of 1878 and that of 1885, and to require the filing of assignments and orders only in those cases which were formerly authorized and regulated by the act of 1885.

It may be that no reason exists for such a distinction.    I confess I cannot discover any ; but plainly the Legislature saw some reason for not including both in the amendment of 1896, above referred to.

and they seem to have been of the same mind when they codified both of those acts into the "Lien Law" of 1897. Section 15 makes no provision for any case where the contract is not for the "improvement of real estate," and as used in the statute a contract to build a schoolhouse for the city is not such an one. That is designated as a ".contract for public improvements," and hence the 15th section does not apply to it.

In section 2 the term "public improvement" is specially defined as an improvement upon any real property belonging to the State or a municipal corporation; and so the contract before us is placed in the category of "public improvements," controlled by the provisions of section 5, and removed from that of "improvement of real property," which is controlled by the provisions of section 3.

Another feature of the section indicates that it was not intended to apply to contracts for "public improvements." The filing is required to be made in the office of the county clerk of the county where the real property improved, or to be improved, is situated. In the case of public improvements, the notice of lien is not filed in such office, but with the head of the department having charge of the work and with the financial officer of the municipal corporation. In the case of improvements of real property, however, the notice of lien is filed in the county clerk's office. It is reasonable to suppose that notice of an assignment should be found in the same office where notice of the lien is filed, but quite unreasonable that notice of an assignment of a fund should be required to be filed in one office and notice of a lien thereon should be required to be filed in another.

Having reached this conclusion, it becomes unnecessary to determine what is the correct construction of section 15. Inasmuch as it does not apply to the case, the Holdens were not obliged to file the order which they received from Langham, and their claim to the fund in question was superior to the plaintiffs' liens. (*Bates* v. *Salt S. N. Bank*, 157 N. Y. 322, 327.)

The objection of the appellants, that the order was inoperative because not allowed by the architect under the provisions of the contract relating to "sub-contracts," cannot be sustained. Even if that provision could be deemed one made in the interest of subsequent lienors, I am of the opinion that it does not affect an order

such as the one in question. Such order is not an assignment of
the contract or of any interest therein, within the meaning of that
provision.

The judgment appealed from was correct and should be affirmed.

All concurred.

. Judgment affirmed, with costs.