FEDERAL HEATING COMPANY, INC., et al., Plaintiffs, *v.* CITY OF BUFFALO and HAGER & GEORGE, INC., et al., Defendants.

(Supreme Court, Erie Equity Term, February, 1917.)

Assignments — of moneys to accrue from performance of municipal contract — when valid — contracts — evidence — Lien Law, § 16 — liability of city to materialmen — waiver — city of Buffalo.

An assignment of moneys to accrue from the performance of a municipal contract made by the contractor for the benefit of specific materialmen, to enable the work to be completed, is valid.

Supreme Court, February, 1917.          [Vol. 99.

Where on the contractor's default in the performance of a contract for the construction of public buildings the city might either sue for damages or take over the contract as agent of the contractor and at its expense, an agreement with a committee of the contractor's creditors to let them complete the building and to pay them the amount still due on the contract was within the rights of the city.

An objection that parol evidence is inadmissible to vary or change a written contract may not be raised by one not a party to the contract, the parties thereto not objecting, particularly if the testimony explains but does not vary the contract.

Under section 16 of the Lien Law, an assignment of funds due a contractor is effective from the time of filing and takes precedence over liens of materialmen subsequently filed.

An assignment of all moneys due under a contract for public work given by the contractor to one named as "trustee" provided that all treasury warrants under the contract should be receipted for by the trustee and the proceeds used for the benefit of the materialmen participating in the assignment which was duly filed. Waivers by the trustee in certain various sums were filed by the contractor who received from the city comptroller certificates which were credited to the contractor's individual bank account and no part thereof was used to discharge the liens to secure which the assignment was made. *Held,* that the bank, having knowledge of the assignment but making no effort to ascertain the extent of the trustee's power, was liable to the creditors of the contractor participating in the assignment for such amounts as were paid out on the unauthorized waivers.

That the city was liable to materialmen participating in the assignment for money paid to the bank on unauthorized waivers which were filed with the comptroller and by him certified to the bank for payment, and that the contractor was also liable to said materialmen for said amounts.

That for moneys paid under the waivers of assignment in violation of the terms thereof the trustee was also liable to such materialmen.

That the contractor was entitled to the balance of the contract price remaining after the city had paid the committee of his creditors for completing the work subject to the claims of legitimate lienors.

Where the contract with the committee of the contractor's creditors provided that the committee should be paid the actual cost of completing the work and then " all lawful claims against the said fund on the part of materialmen, laborers or subcontractors " should be paid, and the balance paid to the committee as representing creditors, the committee thereby subordinated its own claim to the claims of materialmen, laborers and subcontractors, and in view of the city ordinance requiring protection of the claims of laborers and materialmen which had already accrued the original assignment to the trustee was subordinate to such claims.

ACTION to determine the validity and priority of various claims to funds applicable to the payment of the contract price for the construction of municipal work.

Moot, Sprague, Brownell & Macy (S. F. Carr, of counsel), for plaintiffs.

George E. Pierce, for defendant city of Buffalo.

Ernest F. Kruse, for Bank of North Collins.

Hoyt & Spratt (Thomas D. Powell, of counsel), for defendant Hager & George, Inc.

Reginald F. Penton, for defendant Charles A. Hager.

Thomas C. Burke, for McNeill Lumber Company, Inc., and James A. White as receiver of McNeil Lumber Company.

William S. Stearns (Thomas C. Burke, of counsel), for Albert G. Burlage, Allen W. Powers, Fred J. Ranz, F. C. Hager and others, down to and including Robert E. Congdon, and for J. W. Van Dusen.

Supreme Court, February, 1917.        [Vol. 99.

George C. Riley, for F. C. Hager, Florence A. Hager *et al.*

Kellogg & Baker (Philip A. Sullivan, of counsel), for Buffalo Builders' Supply Company.

Killeen, Karl & Chapin (Ray Donnelly, of counsel), for New England Oil, Paint and Varnish Company.

Henry W. Killeen, for John M. Hoen.

Clinton T. Horton, for Thomas Paint and Supply Company, also appearing for Horton, Large & Schreiber, committee.

Julius A. Schreiber, in person.

BISSELL, J.  There is involved in this action the determination of the validity and priority of the various claims of several parties to the funds of the city of Buffalo applicable to the payment of the contract price for the construction of two children's pavilions for the J. N. Adam Memorial Hospital belonging to the city of Buffalo at Perrysburg, N. Y.

On August 4, 1914, the city entered into a contract with Hager & George, Inc., a corporation, for the construction of these pavilions for the sum of $98,980, which was afterward, by reason of certain changes, reduced to the sum of $96,360.22, of which there was paid to the contractor or its assigns $79,365.95, leaving a balance of $16,994.27, when the completion of the work by reason of the default of the contractor was taken over by the city.

On April 3, 1915, Hager & George, Inc., had become indebted to the plaintiffs for materials furnished, and seven liens had been filed against the unpaid balance

of the contract price then amounting to about $35,000. To enable the work to proceed it was necessary for these liens to be discharged, and after several meetings of the lien creditors and other materialmen with the contractor it was agreed that the moneys which would thereafter become available under the contract, to the extent of $34,369.65, should be assigned to one John M. Hoen, trustee; which was accomplished by two instruments dated April 3, 1915, providing the manner in which the trustee should use the moneys thus assigned when they were paid by the city of Buffalo pursuant to the terms of the contract, and among other things providing that $6,500 of moneys previously assigned to the Bank of North Collins should be paid over to Hoen, and should be used by him to make partial payments upon the then existing liens of the plaintiffs, $1,450 of this sum to be used to pay bills then due to certain specified materialmen who had not filed liens. The specific payments out of the $6,500 aggregated $4,878.29. As a consideration for the assignment to John M. Hoen, trustee, the liens which had been filed by the plaintiffs in this action were discharged of record, and the lienors then looked only to the assignment which was made for their benefit and the benefit of specific materialmen above mentioned.

The assignment made by Hager & George, Inc., to the Bank of North Collins, referred to in the agreement with Hoen, was for $7,000, dated March 24, 1915, and delivered by Charles A. Hager to the bank on March 25, 1915, which on that day credited to Hager's individual account $3,500. After the agreement of April 3, 1915, $3,428.29 was paid to Hoen, and used by him, in accordance with the agreement, to apply upon the liens, and to pay certain small claims mentioned in

the agreement. This amount was paid to Hoen on the 6th of April, 1915, by New York draft, drawn by the Bank of North Collins, payable to the order of John M. Hoen, and returned to the bank with this indorsement: "John M. Hoen, Hager & George, Inc., by John M. Hoen, trustee." The balance of the $7,000 assignment of which Hoen was to receive $6,500 was credited to the account of Charles A. Hager by the bank on the eighth, thirteenth and twenty-second days of April, after the bank had paid to Hoen the first $3,428.29, so that when the bank credited the $3,500 of the $7,000 assignment to the account of Charles A. Hager it knew that a part of the balance of the assignment had been paid to Hoen under an agreement between Hager & George, Inc., and Hoen, styling himself trustee. Hoen received only $1,200 of the second $3,500 credited to Hager on the $7,000 assignment, making in all $4,628.29 of the $6,500 which it was agreed Hoen should receive of the $7,000 assignment.

Prior to the assignment to Hoen, trustee, dated April 3, 1915, the Bank of North Collins had from time to time advanced moneys on assignments of moneys due under the contract between the city and Hager & George, Inc.; and each time that such advances had been made the bank had received a certificate from the city comptroller showing that such assignment had been made. After the agreement with Hoen, and on the 19th day of April, 1915, the bank received a certificate made by the comptroller that a waiver of the assignment by Hager & George Inc., to J. M. Hoen, trustee, had been filed in the office of the comptroller of the city of Buffalo, and this certificate specifically stated; "Said waiver being signed by John M. Hoen as trustee for $3,500 against contract for erecting children's pavilions at J. N. Adam Hospital." This certificate was delivered to Charles

A. Hager, who then delivered it to the Bank of North Collins, which credited to his account the amount of the certificate, and its cashier admits that he noticed that John M. Hoen had waived an assignment from Hager & George to him as trustee, but that he made no inquiry as to Hoen's authority before executing the waiver, nor did he inquire into the purpose of Hoen's trust, nor as to the persons for whom he was acting as trustee.

On the 18th of May, 1915, Hoen again executed a waiver of the assignment to him as trustee to the Bank of North Collins, and the city comptroller delivered to Charles A. Hager a certificate to the extent of $7,000 in form similar to the one presented at the bank on April nineteenth. The bank credited the amount of this waiver to the account of Charles A. Hager, and subsequently $5,000 of this amount was paid to Hoen. On May 25, 1915, another waiver of his assignment was made by John M. Hoen as trustee for $2,300, and the comptroller again delivered to Hager a certificate which was taken by him to the Bank of North Collins, which credited the face of the waiver to Hager's individual account. No part of this $2,300 was paid to Hoen. A fourth assignment was made by Hoen on the 29th of May, 1915, for $800, and a certificate issued in the same form as the previous certificates. It was taken to the Bank of North Collins by Mr. Hager, and the face of the certificate deposited to the credit of Charles A. Hager. Mr. Hoen received no part of this money.

Altogether Hoen, trustee, executed waivers of his assignment in favor of the Bank of North Collins in the aggregate sum of $13,600, and the bank received from the city of Buffalo $11,450 upon these assignments, $5,000 of which was paid over to John M. Hoen.

Supreme Court, February, 1917. [Vol. 99.

One thousand four hundred and fifty dollars of this money was used for pay-roll upon a contract for construction work at Scarsdale, N. Y., and had no relation to the construction work at Perrysburg, or the purpose for which the agreement of April 3, 1915, was made; and $400 of the money paid over to Hoen was used for pay-roll upon another contract at Waterford, N. Y. Neither of these payments was for the benefit of the claimants mentioned in the assignment to Hoen. The bank paid out the moneys which it had credited to Charles A. Hager, upon Hager's individual checks, and made no inquiry as to the purposes for which the money was to be used.

In the latter part of June, 1915, Hoen made another waiver of assignment for $7,000, upon which he made an unsuccessful attempt to obtain money from the Bank of North Collins, and he then served a notice upon the comptroller, in which he stated in substance that the waivers of assignment in favor of the Bank of North Collins had been obtained through fraud, and that he canceled the outstanding waivers. The city thereupon refused to pay the balance of the $2,300 assignment, amounting to $1,350, and the $800 waiver of assignment, and this amount ($2,150) has remained in the city treasury since that time.

After the assignment to Hoen of April 3, 1915, the contractor, Hager & George, Inc., had not progressed with the work in a manner which was satisfactory to the city, and on or about the 3d day of July, 1915, the city served upon the contractor and its bondsmen a notice provided for by the contract, which gave the contractor five days in which to increase its force and supply necessary material for the proper and speedy completion of the buildings, and to notify it that upon its failure to furnish such increased force and additional

material the city would take possession of the buildings and the contractor's tools, plants, appliances and material; that the city would take possession of the same, and avail itself of all the rights and privileges granted under the contract. The contractor did nothing after the receipt of this notice, and immediately after its service negotiations were started between the city and Clinton T. Horton, Julius A. Schreiber and Fred R. Large, as a committee of creditors, subcontractors and materialmen of Hager & George, Inc., for the completion of the buildings; and on the 22d day of July, 1915, the deputy building commissioner informed the committee that he had determined to allow them to complete the buildings. His letter of notification read in part as follows: " It has been agreed that you are to take charge of the completion of the work to be done under these contracts. *This means that the City has taken over the work under the Hager & George contracts, pursuant to the notice sent to that concern and its bondsmen, and is employing your committee as the authorized representatives of the materialmen and sub-contractors to complete the work,* for which you are to be paid all that is left in the city treasury credited to said contracts, after deducting all lawful claims against said funds on account of the material, labor, or sub-contractors which may exist at the time of the completion of the work. It is also understood that the Bank of North Collins makes a claim of $2,150 against this fund, and that the amount of such claims will be left in the city treasury until the right to it is determined either by litigation or agreement. Of course it is also understood that the work is to be done in strict pursuance of the contracts and specifications."

The committee immediately undertook the comple-

tion of the buildings. At the time of serving the notice, and entering into the agreement and understanding with the committee, there was to become due under the contract on the completion of the buildings the sum of $16,994.24. Material was furnished, labor performed, and payments made during the progress of the work by the committee, to the amount of $12,200, which left in the hands of the city treasurer applicable to this contract the sum of $4,794.27. The committee proceeded with the work until the buildings were substantially completed, but there were left undone certain items of work, and certain amounts of material were not furnished which it was necessary to furnish to fully complete the contract, and finally the committee left the buildings in an incomplete state, with the understanding that the city was to complete such minor defects as existed; and it was agreed between the committee and the city that the value of installing these various items, which would fully complete the buildings, was the sum of $1,250, this amount being deducted from the amount of cash in the hands of the city treasurer and leaving $3,544.27 applicable to the payment for material and labor furnished under the contract hereinbefore referred to. The committee proved upon the trial that it has furnished material and performed labor to the extent and value of $2,293.55, for which it has not been paid. After this amount is paid there will be left in the hands of the treasurer of the city of Buffalo the sum of $1,250.72. Evidence was given on the trial to support the claim that a proper item of expense in completing the contract was the superintendence and financial assistance furnished by Messrs. Horton and Schreiber, two members of the creditors' committee, who undertook the completion of the buildings, and that the value of such

services was $1,500; but the committee's services were rendered in the interest of their clients as well as acting for the city and the funds in the city treasury should not be depleted by the payment of this allowance as agains the lawful claims of laborers and materialmen.

John M. Hoen had given to some of the parties, for whose benefit the assignment to him of April 3, 1915, was made, undertakings that he would faithfully perform the duties imposed upon him by that contract, and after Messrs. Horton, Schreiber and Large had been appointed a committee of creditors to complete the contract they discussed with him an assignment of all of his rights under the contract of April third, and as a result it was agreed that Hoen should assign to the committee all of his rights under that contract; and in consideration of the release by said creditors of the undertakings which Mr. Hoen had provided he sold to the committee the contractor's plant and equipment, so that there would be no claim on the part of Hager & George, Inc., that it had any rights either to the contractor's plant and equipment, or to the moneys to become due under the contract with the city, or any right under that contract whatsoever. The committee also obtained from Hager & George, Inc., a consent to the transfer by John M. Hoen of said plant and equipment, and an assignment of all the rights of Hager & George, Inc., in and to the contract and moneys to become due thereunder.

Under the assignment to Hoen of April 3, 1915, the moneys to be collected by him were not to be used on behalf of the contractor to finance the work, but as the agent of the creditors named therein, to receive and disburse the funds assigned for their benefit, in accordance with the terms of the agreement. It is a valid

assignment of moneys to accrue from the performance of the contract between the city and Hager & George, Inc., for the payment of the claims for which liens had been filed to the extent of $13,875.45, and $1,512.94 for which liens could be filed, and for the other purposes set forth in the assignment. *Bates* v. *Salt Springs National Bank,* 157 N. Y. 322; *Brace* v. *Gloversville,* 167 id. 452.

Under the terms of the contract between the city and the contractor the city had the right, when the contractor failed, to proceed with the erection of the buildings and have them completed within the time provided for in the contract. The city had the right either to serve a five days' notice as provided for in the contract, to terminate the contract, or to take possession of the buildings, tools, plant and appliances, and to complete the buildings as the agents of and at the expense of the contractor. The city chose to proceed under the latter provision of the contract, and entered into an agreement with the creditors' committee referred to, agreeing to pay the balance to become due under the contract, to wit, the sum of $16,-994.27 to the committee as follows: It agreed to pay as the work progressed the actual cost of the labor and material, and after that expense had been met if there was any money left applicable to the contract it was to be used to pay the lawful liens and claims, and after the lawful liens and claims had been paid, if anything remained, the balance was to be paid to the committee. The city was acting within its rights in proceeding in this manner, and chose one of the two courses which were open to it, to wit, either to complete the buildings at the expense of the contractor, or to cancel the contract and seek to recover damages. It adopted the equitable course in the circumstances, giving the lien-

ors and claimants all of the benefits which they could possibly derive and at the same time insuring to the defendant city the completion of the contract for the amount agreed upon. *Van Clief* v. *Van Vechten,* 130 N. Y. 571; *Fraenkel* v. *Friedmann,* 199 id. 351; *Dennison Construction Co.* v. *Manneschmidt,* 204 id. 404.

A number of liens were filed against the funds in the city treasury, all of which liens were for labor rendered and materials furnished to the contractor prior to the time of the service of the notice by the city taking over the completion of the contract and entering into the agreement with Messrs Horton, Schreiber and Large. There are no claims for material or labor against the committee, which completed the buildings. The contract between the committee and the city for the completion of the buildings consists of the letters between the committee and the superintendent of buildings. Upon the trial proof was offered and received under objection to explain and make more clear the intention of the parties. It was claimed by some of the defendants that the testimony on this subject violated the rule that testimony could not be given to vary or change a written contract. This rule has no application where the objection is raised by a person not a party to the contract, and the contract here being between the committee and the city, neither of which objected to the admission of the testimony, it was competent to show by such testimony the intention of the parties. Such testimony did not tend to vary or change the terms of a written contract, but simply to explain the meaning thereof. *Juilliard* v. *Chaffee,* 92 N. Y. 529.

" Oral testimony as to the conversations which preceded the execution of the appellant's written consent was incompetent. * * * The general rule which

excludes evidence of parol negotiations and undertakings, when offered to contradict or substantially vary the legal import of a written agreement, applies only in controversies between the parties to the instrument." *Hainkinson* v. *Vantine,* 152 N. Y. 20, 30.

All of the liens and claims against the funds applicable to the construction of the pavilions were filed after the 6th of April, 1915, and after the two assignments which were concurrently executed to John M. Hoen were filed with the comptroller and the commissioner of public works, and are inferior to the claims of the plaintiffs under the Hoen assignment, with the exception of the claims of the creditors' committee, Horton, Schreiber and Large, for the cost of completing the work to be done under the contract. Section 16 of the Lien Law provides that such an assignment shall have effect and be enforcible from the time of filing. The assignment to Hoen therefore takes precedence over the liens subsequently filed. *Stevens* v. *Ogden,* 130 N. Y. 182; *Bates* v. *Salt Springs National Bank, supra; Brill* v. *Tuttle,* 81 N. Y. 454; *Lauer* v. *Dunn,* 115 id. 405; *McCorkle* v. *Herrmann,* 117 id. 297; *Beardsley* v. *Cook,* 143 id. 143.

The defendant Bank of North Collins had notice of the fiduciary capacity in which John M. Hoen was acting and is liable to the plaintiffs for the moneys not paid to Hoen under the $7,000 assignment dated March 24, 1915, and for all moneys deposited to the individual credit of Charles A. Hager upon the waivers of assignment made in the bank's favor by John M. Hoen.

In *Suarez* v. *De Montigny,* 12 Misc. Rep. 259; affd., 1 App. Div. 494; 153 N. Y. 678, it was held, " The rule is stated in the American and English Encyclopedia of Law, volume 27, page 264, as follows: ' Those who deal with a trustee upon the faith of the trust estate which

he represents are bound at their peril to know the extent of the trustee's power. It is only when they have no notice of a trust, either actual or constructive, that they are to be protected in the possession of trust property, or in the enjoyment of rights acquired through dealings with the trustee.' And the rule thus stated is amply sustained by the authorities." *Swan* v. *Produce Bank,* 24 Hun, 274; *First National Bank* v. *National Broadway Bank,* 156 N. Y. 459; *Fellows* v. *Longyor,* 91 id. 324, 331; *Kirsch* v. *Tozier,* 143 id. 390.

The city of Buffalo is liable to the plaintiffs for all moneys paid to the Bank of North Collins on waivers of assignment made by John M. Hoen, trustee. The assignment to Hoen provided that all treasury warrants when drawn should be received and receipted for by Hoen and the proceeds used for the benefit of the plaintiffs as therein stated. The assignment was filed with the proper officers of the city, but its provisions were disregarded, and warrants and the proceeds thereof were delivered by the city to the Bank of North Collins without the knowledge or consent of the plaintiffs. Altogether the city paid the Bank of North Collins $11,450 upon waivers of assignment, of which the bank used $6,450 to reimburse it for moneys previously advanced to Charles A. Hager, and $5,000 was paid to John M. Hoen. There is no proof that any of the parties who were entitled to receive the money under the assignment to Hoen ever received any part of the sum of $6,450. It was the duty of the city of Buffalo to deliver warrants as they became due to John M. Hoen, trustee, alone, as it had notice that he was acting in a fiduciary capacity for the plaintiffs, and it also had notice of the purposes for which he was to use the proceeds of these warrants, and when the city delivered any warrants or the proceeds thereof to any party

other than Mr. Hoen, whether upon his waiver or otherwise, the city was rendered liable to the plaintiffs for any failure of the application of the funds to the purposes for which the assignment to Mr. Hoen had been made. *Holt* v. *Colonial Trust Co.*, 97 App. Div. 305; *Moore* v. *American Loan & Trust Co.*, 115 N. Y. 65.

The defendant Charles A. Hager is also liable to the plaintiffs for the moneys which he received from the Bank of North Collins upon the assignment of March 24, 1915, and the waivers of assignment made by the defendant Hoen as above set forth. It was proved on the trial that Hager individually received $6,500 of the $7,000 under the assignment to the bank of March 24, 1915, and there is no evidence that the persons entitled to receive these moneys under the assignments to Hoen, which were executed in behalf of Hager & George, Inc., by Charles A. Hager as secretary and treasurer, ever received any part of the remainder of the $6,500.

The evidence is that all of the moneys paid by the city to apply upon these waivers of assignment were used by the Bank of North Collins to pay antecedent indebtedness of the defendant Charles A. Hager to the bank.

The defendant John M. Hoen is also liable to plaintiffs for moneys which he received, and for the moneys paid to the Bank of North Collins upon his waivers of assignment, and not devoted to the purposes mentioned in the assignment dated April 3, 1915. It was proved on the trial that all of the moneys received by Mr. Hoen were credited to his account in the Third National Bank, aggregating the sum of $12,006.29, and that all of these moneys were used for payments in accordance with the assignment, with the exception

of $1,850, which the defendant Hoen used to meet payrolls of Hager & George, Inc., upon the contracts which they had for construction work at Scarsdale, N. Y., and Waterford, N. Y.; and for this amount, together with the balance of the moneys as hereinbefore stated which were paid to the Bank of North Collins, and not received by Hoen as trustee, the defendant Hoen is personally liable to the plaintiffs.

The city was acting within its rights in contracting with the committee to complete the work and to pay therefor the actual cost of completing the work, and the original contractor would be entitled to the balance of the contract price after paying for the completion of the work, and this balance, if any, would be subject to the claims of legitimate lienors. *Fraenkel* v. *Friedmann,* 199 N. Y. 351.

The liens for labor and materials filed against Hager & George, Inc., will attach to the funds in the city treasury to the extent of the difference between the cost of completion and the amount unpaid the contractor or its assigns, or in other words to the balance due the contractor after paying the cost of completion. *Van Clief* v. *Van Vechten, supra.*

As above stated, on July 22, 1915, the balance in the city treasury available for the completion of the contract was $16,994.27. The contract of the creditors' committee with the city for completion was that the committee should be paid the actual cost of completing the work, that then '' all lawful claims against said fund on the part of the materialmen, laborers or subcontractors '' should be paid, and the balance paid to the committee as representing plaintiffs. The '' lawful claims of materialmen, laborers or subcontractors '' did not refer to any indebtedness created by the committee, for the Lien Law would protect any

such claims, but necessarily referred to indebtedness incurred by Hager & George, Inc., in the prosecution of the work. Any claim of the committee through assignment from Hager & George, Inc., to Hoen and from Hoen to the committee does not come within the term " lawful claims against said fund on the part of the materialmen, laborers or subcontractors." The committee consequently, by its contract with the city, subordinated its own claim by assignment, to " the claims of materialmen, laborers and subcontractors."

In completing the work the committee actually expended the sum of $14,493.55 and owes $51.55, making $14,545.10 as the total cost of completion. Of this amount the committee received $2,550 from the sale of certain contractor's equipment of Hager & George, which had been conveyed to the committee to enable it to raise funds to complete the work, so that the actual net cost to the committee of completing the contract was $11,995.10. The balance of the fund of $16,994.27 in the city treasury on July 22, 1915, after deducting $1,250 to be retained by the city to fully complete the contract, is, therefore, under the terms of the contract between the city and the committee, applicable to the payment of the persons who performed labor or furnished material to Hager & George and who filed liens. This balance amounts to $3,749.17.

The city has paid to the committee $12,200, so that of this fund applicable to the payment of laborers and materialmen there is in the hands of the city the sum of $3,544.27 and there is in the hands of the committee $204.90. Mr. Schreiber testified that the committee has a balance in bank of $319.12 against which is to be charged the unpaid disbursement of $51.55, leaving a net balance of $267.57.

In addition to the above amounts the committee claimed to be entitled to a trenching machine and

steam shovel and instituted a replevin action to recover same. In case the committee should realize anything from the trenching machine and steam shovel they would be bound to account therefor to the laborers and materialmen.

That it was the intention of both the city and the committee to subordinate the assignment of April 3, 1915, to the claims of the laborers and materialmen of Hager & George, Inc., is evident from the provisions of section 22 of chapter III of the ordinances of the city of Buffalo which were incorporated in the contract and which read as follows:

" Section 22. In case any Contractor having a contract to perform any public work for the City shall fail to pay any of his employees or laborers engaged or employed on such work, when their salaries or wages become due and payable and written notice shall be given by them to the Commissioner of Public Works, there shall be retained from the next estimate, whether final, or any preceding estimate, made on the work in favor of the Contractor, a sum sufficient to pay such employees or laborers, as shown by such notices, a certified list of which the Department of Public Works shall forthwith file with the Comptroller, and if the Contractor fails to pay such employees or laborers forthwith after the filing of such notices and to notify the Commissioner of Public Works thereof, the Common Council may direct a warrant or warrants drawn to the order of the Treasurer on the fund out of which the work is payable and charge the same to the Contractor; and it is expressly stipulated by the Contractor that the Treasurer, upon the certificate of the Commissioner of Public Works, may with the proceeds of such warrant pay such employees or laborers, on a verified statement of the amounts due each, as

shown by the books of the Contractor, or upon the statement being verified by the timekeeper or any foreman of the contractor, or, in case any such verified statement cannot be obtained, on the affidavits of the employees or laborers themselves, a receipt must be taken for each payment by the Treasurer and forthwith filed with the Comptroller, who shall charge the same to the Contractor; and it is further expressly stipulated that in no event shall any such sum so retained by the City ever become due or payable to the Contractor under his contract or become subject to any order or assignment previously or subsequently made by him, excepting upon his paying and satisfying the claims of such employees or laborers before the Commissioner of Public Works shall have paid the same as herein provided.''

The city was desirous of seeing the claims of both the laborers and materialmen paid. It had the right to pay the laborers, at least, and deduct the amount of their claims from the balance of the contract price, notwithstanding the previous assignment given by Hager & George, Inc., to Hoen. The city, however, did not go to this extent, but insisted that these laborers' claims be paid after the actual cost of completion had been paid, and the city also put the materialmen and subcontractors of Hager & George, Inc., in the same position as the laborers. And in the letters which passed between Mr. Reynolds, deputy building commissioner, and the committee this intention is plain. In the first letter of July fourteenth the committee proposed to accept for their compensation in completing the work " the amount remaining unpaid by the city upon said contracts with Hagar & George, same being the full contract prices plus any extras which may be mutually agreed upon, less allowance of

$3,750 for change of certain items, also all payments heretofore made to Hager & George and to Mr. Hoen and any undischarged labor liens.'' On July seventeenth Mr. Reynolds called the attention of the committee to the claim of the McNeil Lumber Company the amount of which was to be retained by the city until the receipted bill should be delivered to the city treasurer. As a result of these letters the contract of July twenty-second was agreed upon. There can be no doubt, therefore, but that the committee by its contract with the city expressly subordinated the Hoen assignment to the liens of laborers and materialmen of Hager & George.

The liens, therefore, of persons performing labor or furnishing material to Hager & George for the contract work are entitled to payment in their respective order of priority to the extent of $3,749.17.

Ordered accordingly.